IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES ROBERT GORTON,

    Plaintiff,                  No. CIV S-08-3069 LKK GGH P

  vs.

TODD, et al.,

    Defendants,            <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

I. <u>Introduction</u>

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.  Pending before the court are defendants Rad, Chin, Pappoe, Stevenson and Don's motion for summary judgment filed on November 24, 2009.  Plaintiff filed an opposition on December 15, 2009 and defendants filed a reply on December 18, 2009.  For the reasons that follow, the court recommends that the motion be granted and these defendants be dismissed from this action.

II. <u>Complaint</u>

        This case is proceeding on the first amended complaint (FAC), filed on February 26, 2009. Plaintiff alleges that these defendants, all of whom are doctors employed at the University of California Davis Medical Center (UCDMC), were deliberately indifferent to his serious medical needs.  Prior to being treated at UCDMC, plaintiff was being treated by medical

1  staff at Mule Creek State Prison (MCSP) where he is incarcerated, for a nephrotic syndrome
2  related to his kidneys.[1]  Plaintiff was taken to UCDMC to be seen by nephrologists (kidney
3  disease specialists) at that facility after experiencing very high blood pressure and protein in his
4  urine.  Plaintiff's allegations against the UCDMC defendants involve delays in signing medical
5  reports, conducting tests and following up on tests.  Plaintiff contends that his condition
6  worsened as a result of these delays.

   Plaintiff alleges that Dr. Rad and Dr. Chin took over 30 days to file their medical reports and despite saying they would see plaintiff again in three months, it took five months. Plaintiff also states that these doctors ordered tests, but no new treatment.

   Plaintiff states that Dr. Pappoe and Dr. Stevenson diagnosed several problems with plaintiff's kidneys but did not file their report until one week after the exam, which plaintiff contends led to a seven week delay in obtaining a kidney biopsy.

   Plaintiff alleges that, at a later exam, Dr. Pappoe and Dr. Don reordered the biopsy but did not file their report until a week later, which further added to the delay in obtaining the biopsy.

   At another meeting with Dr. Pappoe and Dr. Don, they recommended that plaintiff receive a colonoscopy, but did not file their reports until over 30 days later which delayed the colonoscopy.

   Plaintiff generally alleges that all of these delays added to the deterioration of his kidney, caused pain and suffering and defendants were aware or should have been aware that this would result.

III.  Motion for Summary Judgment

   Legal Standard for Summary Judgment

   Summary judgment is appropriate when it is demonstrated that the standard set

---

[1] Also named as defendants are several medical processionals at MCSP, who have separately moved for summary judgment.

forth in Fed. R. Civ. P. 56(c) is met. "The judgment sought should be rendered if . . . there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

\\\\\
\\\\\

IV. Undisputed Facts

The following of defendants' undisputed facts (DUF) are either not disputed by plaintiff, or following the court's review of the evidence submitted, have been deemed undisputed:

At all relevant times, plaintiff was incarcerated at MCSP. DUF #1. Plaintiff was first evaluated at UCDMC on July 27, 2007 for symptoms involving nephrotic syndrome. Nephrotic syndrome in adults is a condition showing high levels of protein in the urine with corresponding low levels of protein in the blood with possible swelling of certain body parts. The condition is caused by underlying disease, and its etiology may be aided by a kidney biopsy. *Nephrotic Syndrome in Adults*, http://kidney.niddk.nih.gov/kudiseases/pubs/nephrotic (6/4/2010). "[After discussing different treatments] Unfortunately, these treatments do not always bring about remission of nephrotic syndrome. Depending on the disease, as many as half of the patients may develop chronic kidney disease that progresses to end stage renal disease." Id. Apparently thus far, plaintiff is in the lucky half. DUF #2. Plaintiff was treated by defendants Dr. Rad and Dr. Chin on that date. Id. Plaintiff's medical records were not provided at this first meeting but the impression was of recent onset nephrotic syndrome of unknown etiology. Id. Lab work was ordered and completed at this meeting. Id. Doctors Rad and Chin also requested additional lab work prior to plaintiff's next appointment. DUF #4. Dr. Rad electronically signed his report on August 29, 2007, and Dr. Chin electronically signed the report on August 31, 2007. DUF #2. This was the only time plaintiff was seen by Dr. Rad and Dr. Chin. FAC at 24-25.

Plaintiff was next seen at UCDMC on December 5, 2007 where he was seen by defendants Dr. Pappoe and Dr. Stevenson. DUF #5. Dr. Pappoe's diagnosis was the same as Dr. Rad's diagnosis from plaintiff's previous visit. Id. It was noted that a renal biopsy would be useful, but coagulation studies would be needed prior to a biopsy and those could be done at MCSP. Motion for Summary Judgment (MSJ), Exh. B at 72. Plaintiff was to be notified at the

\\\\\

time of the scheduled renal biopsy. Id.[2] Dr. Pappoe dictated a letter regarding the exam and electronically signed it on December 10, 2007. DUF #5. Dr. Stevenson electronically signed the letter on December 13, 2007. Id. An addendum was added on February 7, 2008 by Dr. Pappoe, which was electronically signed by Dr. Stevenson on February 13, 2008. Id.

Plaintiff had a follow up examination on January 23, 2008, with Dr. Pappoe. DUF #6. Prior to this exam, plaintiff completed a renal ultrasound that showed normal kidneys. Id. Dr. Pappoe recommended that a spot protein/creatinine ratio be taken, as well as a basic metabolic panel and complete blood count to assess plaintiff's renal function and Dr. Pappoe noted that for a renal biopsy, plaintiff needed labs such as a complete blood count and coags, as well as blood pressure less than 130 systolic. Id. Dr. Pappoe dictated a letter to non-defendant Dr. Smith that same day concerning plaintiff's exam and electronically signed it on January 31, 2008. Id. Defendant Dr. Don electronically signed it on February 5, 2008. Id.

On January 28, 2008, plaintiff was admitted to UCDMC where Dr. Pappoe performed an ultrasound-guided biopsy of plaintiff's left native kidney. DUF #7.[3] The surgical pathology report indicated a diagnosis of membranous nephropathy (stage 2), mild interstital lymphocytic infiltrate with tubilitis consistent with interstitial nephritis and mild chornic tubulointerstitial changes. Id. It was noted that this possibly represented a chronic injury of the interstitium due to proteinuria, however a separate process such as drug-induced interstitial nephritis could not be entirely excluded. Id.

Plaintiff had a follow up visit with Dr. Pappoe on February 13, 2008. DUF #8.

---

[2] Plaintiff argues that at the December 5, 2007 exam, he was told that he should receive a renal biopsy within 1-2 weeks. Plaintiff is mistaken. As discussed below, it was the January 23, 2008 exam where it was recommended that plaintiff receive a renal biopsy in the next 1-2 weeks and plaintiff received the renal biopsy five days later on January 28, 2008.

[3] Many of plaintiff's allegations involve when the doctors' reports were electronically signed. However, the court notes that while the doctor's report ordering the renal biopsy was not electronically signed until January 31, 2008, it is undisputed that plaintiff received the biopsy on January 28, 2008. Thus, it is apparent that the electronic signature that plaintiff attaches such weight to in his arguments does not necessarily equal a delay in treatment.

1  Dr. Pappoe determined that plaintiff had a chronic kidney disease (stage III) with several other
2  factors.  Id.  Dr. Pappoe noted that plaintiff was currently and appropriately taking Angiotensis
3  Receptor Blockers and that given the diagnosis, plaintiff may be a candidate for treatment with
4  CellCept for six to twelve months as well as Prednisone for three to six months.  Id.  However,
5  prior to prescribing this medication, Dr. Pappoe wanted to rule out several secondary causes of
6  plaintiff's condition such as colon cancer, as plaintiff has a family history of colon cancer.  Id.
7  The medical report indicates that Dr. Pappoe recommended that plaintiff obtain a colonoscopy.
8  MSJ, Exh. B at 59.  Dr. Pappoe also stated that the medications should not be started until
9  plaintiff was back at MCSP so plaintiff's white count could be monitored on a weekly to
10 biweekly basis.  DUF #8.

11        Plaintiff had a follow up appointment with Dr. Pappoe on March 26, 2008, and
12 plaintiff reported that he was in relatively good health.  DUF #9.  Dr. Pappoe again noted that
13 plaintiff should undergo a colonoscopy and if the colonoscopy was negative, plaintiff should start
14 the medication of CellCept and Prednisone.  MSJ, Exh. B at 54.

15        On May 28, 2008, plaintiff underwent a colonoscopy that only revealed a
16 dimunitve polyp.  DUF #10.  The following day plaintiff began the prescribed medication of
17 CellCept and Prednisone.  Id.  Plaintiff had another meeting with Dr. Pappoe on July 30, 2008.
18 DUF #11.  Plaintiff had another follow up appointment with Dr. Pappoe on November 12, 2008,
19 where plaintiff's medication was adjusted.  DUF #12.

20        Plaintiff filed the original complaint in this action on December 18, 2008 and the
21 amended complaint which this action proceeds, on February 26, 2009.

22        Plaintiff met again with Dr. Pappoe on March 11, 2009, who noted that plaintiff's
23 24 hour urine collection showed minimal improvement in his proteinuria.  DUF #13.  Dr. Pappoe
24 discussed with plaintiff that he may be resistant to CellCept and Prednisone.  Id.  Plaintiff's
25 medical plan included finishing the 12 month course of CellCept and decreasing the Prednisone
26 and then follow up in two months and if there was no improvement consider converting plaintiff

1 | to Cytoxan or Cyclosporin. Id.

2 | On May 27, 2009, plaintiff was seen by non-defendant Dr. Singh. DUF #15.
Plaintiff's swelling had greatly improved and he was feeling dramatically better in terms of his energy level. Id. Dr. Singh noted that plaintiff was at least achieving partial remission but it was unclear if part of plaintiff's symptoms were improving on their own or due to the immunosuppressives. Id. Dr. Singh also provided plaintiff with counseling regarding Cyclosporin and Cyclophosphamide. Id.

Plaintiff's last appointment at UCDMC was on June 17, 2009, where he was treated by non-defendant Dr. Singh. DUF #17. There was further discussion concerning different medications and Dr. Singh noted that plaintiff's kidney function appeared stable compared to his last visit. Id.

In his deposition, plaintiff stated that he was not dissatisfied with the care he received from Dr. Rad and Dr. Chin on July 27, 7007. MSJ, Exh. A at 33. Plaintiff has not been told by any physician that earlier treatment would have resulted in a better outcome of plaintiff's condition. Id. at 25-26. No physician has told plaintiff that there was any breach of the standard of care in the timing of any of the medical reports from UCDMC. Id. at 45. No physician has told plaintiff that he suffered any kidney damage as a result of the treatment at UCDMC. Id. at 48. No physician has told plaintiff that he suffered any injury as a result of the timing of the colonoscopy he received. Id. at 57. On December 15, 2008, plaintiff sent a letter to UCDMC discussing some problems plaintiff had with Dr. Pappoe and requesting a new doctor. Opposition, Exh. M.

V. Disputed Facts

There are very few disputed facts in this case. Plaintiff was generally displeased with his medical care and the delays between appointments and when procedures were carried out.

Plaintiff maintains that at the February 13, 2008 exam with Dr. Pappoe and Dr.

8

Don, Dr. Don verbally indicated that plaintiff should have a colonoscopy in two to three weeks. FAC at 32. The medical report documenting this exam simply states that a colonoscopy was recommended. MSJ, Exh. B at 59. However, the medical report from the March 26, 2008, exam indicates that plaintiff should undergo a colonoscopy in the near future. Regardless, the colonoscopy occurred on May 28, 2008.

VI. <u>Eighth Amendment Claim</u>

<u>Legal Standard</u>

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. <u>Wilson v. Seiter</u>, 501 U.S. 294, 299 (1991); <u>McKinney v. Anderson</u>, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." <u>Hudson v. McMillian</u>, 503 U.S. 1, 6 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. <u>See</u>, <u>e.g.</u>, <u>Wood v. Housewright</u>, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); <u>Hunt v. Dental Dept.</u>, 865 F.2d 198, 200-01 (9th Cir. 1989). <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992), <u>overruled on other grounds</u>, <u>WMX Technologies v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994), the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of

course, negligence is insufficient. Farmer, 511 U.S. at 835. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. Id. at 836-37. Nor is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842.

It is nothing less than recklessness in the criminal sense – subjective standard – disregard of a risk of harm of which the actor is actually aware. Id. at 837-42. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842. If the risk was obvious, the trier of fact may infer that a defendant knew of the risk. Id. at 840-42. However, obviousness per se will not impart knowledge as a matter of law.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). However, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

Additionally, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 407 (9th Cir. 1985). Although the delay in medical treatment must be harmful, there is no requirement that the delay cause "substantial" harm. McGuckin, 974 F.2d at 1060, citing Wood v. Housewright, 900 F.2d 1332, 1339-40 (9th Cir. 1990). A finding that an inmate was

seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry. McGuckin, 974 F.2d at 1060. In summary, "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant." Id. at 1061.

Superimposed on these Eighth Amendment standards is the fact that in cases involving complex medical issues where plaintiff contests the type of treatment he received, expert opinion will almost always be necessary to establish the necessary level of deliberate indifference. Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988). Thus, although there may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the treatment he received equated with deliberate indifference thereby creating a material issue of fact, summary judgment should be entered for defendants. The dispositive question on this summary judgment motion is ultimately not what was the most appropriate course of treatment for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence, criminally reckless.

Analysis

The court finds that plaintiff's condition and the ongoing treatment for his kidney problems are properly characterized as a serious medical condition under the Eighth Amendment. Plaintiff's injuries significantly affect his daily activities and a reasonable doctor would find his injuries worthy of treatment. The issue remains if any of the doctors were deliberately indifferent in their treatment of plaintiff.

Dr. Rad and Dr. Chin

It is undisputed that Dr. Rad and Dr. Chin met with plaintiff only once on July 27, 2007. It is also undisputed that these defendants were not provided a copy of plaintiff's medical file prior or during the exam. Dr. Rad and Dr. Chin performed several tests on plaintiff and ordered additional tests to be conducted.

Plaintiff's allegations against these defendants are that they did not electronically file their medical reports until nearly a month after the exam and as a result plaintiff's follow up appointment was delayed by several months. Plaintiff maintains this delay caused a delay in treatment that was in violation of the Eighth Amendment.

However, there is no evidence that this delay caused plaintiff any harm. Nor does plaintiff state what treatment should have been provided in that time period. Plaintiff concludes that because his test results revealed certain characteristics and lab markers, these defendants should have immediately provided some type of medical care, that plaintiff fails to describe. Plaintiff has set forth no allegations that this delay was in any way intentional or that defendants knew of a risk or disregarded any such risk. Mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 407 (9th Cir. 1985). See also Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir.2002) (holding that where the prisoner is alleging that delay of medical treatment evinces deliberate indifference the prisoner must show that the delay led to further injury).

Moreover, plaintiff stated that he was not dissatisfied with the care he received from Dr. Rad and Dr. Chin nor has plaintiff been told by any physician that any harm resulted from the actions of these defendants.

Plaintiff's conclusory statements that these defendant were deliberately indifferent after treating plaintiff once are insufficient. Simply stating that further medical care was required without describing the medical care needed is equally insufficient. Plaintiff has not presented evidence that these defendants were negligent let alone evidence that could support the much higher standard of deliberate indifference. Summary judgment should be granted for Dr. Rad and Dr. Chin.

Dr. Pappoe, Dr. Stevenson and Dr. Don

Plaintiff's claims against these defendants involve several exams where plaintiff met with the defendants and plaintiff alleges they were deliberately indifferent in not more

quickly providing a renal biopsy and a colonoscopy.

As discussed above, a renal biopsy was mentioned on December 5, 2007, and again on January 23, 2008. The renal biopsy procedure was conducted on January 28, 2008. Plaintiff mistakenly states that at the December 5, 2007 exam, a renal biopsy was to be conducted within one to two weeks, when in fact, the one to two week time frame was not provided until January 23, 2008. The biopsy occurred five days later. Therefore, plaintiff's allegations that these defendants are liable for somehow delaying the biopsy for six weeks has no merit. Even assuming arguendo that defendants did promise a biopsy on December 5, 2007, and waited six weeks to conduct it, plaintiff has presented no evidence that any harm resulted from this time span. Plaintiff, who is not a doctor, let alone a specialist in kidney diseases, simply concludes that a delay caused medical harm. Plaintiff's claim concerning the renal biopsy is entirely meritless.

Plaintiff alleges that on February 13, 2008, Dr. Don verbally stated that plaintiff should have a colonoscopy in two to three weeks, while the written report by Dr. Pappoe only states that a colonoscopy was recommended. Plaintiff did not receive the colonoscopy until May 28, 2008. As a result of the delay in the colonoscopy, plaintiff had to wait until May 29, 2008, before he could begin medication treatment of CellCept and Prednisone. Plaintiff states that this delay in starting the medication led to deterioration of his kidney.

Similarly, plaintiff presents no evidence that any kidney damage resulted from this delay. After a year on CellCept and Prednisone, it became apparent that the medications were not proving entirely beneficial to plaintiff, yet there is no indication that this was as a result of the delay, rather one doctor opined that plaintiff may be resistant to the medications. To the extent that plaintiff can allege that defendants were deliberately indifferent by carefully choosing a treatment plan that was not fully successful, any claim would be meritless. In fact, around the time that plaintiff ceased using these medications, a doctor noted that plaintiff was at least achieving partial remission, though it was unclear if it was the medication treatment or just

plaintiff's symptoms improving.  All claims related to the colonoscopy should be dismissed.

Thus, all of plaintiff's allegations against Dr. Pappoe, Dr. Stevenson and Dr. Don are meritless and fail to set forth any genuine issue as to any material fact.

After thoroughly reviewing the record it is apparent that all the defendant doctors from UCDMC provided plaintiff a high level of care.  Plaintiff has focused on the short delays between visits and treatments but fails to take account of all the care he received.  As stated above, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference.  See Shapley.  There is hardly any evidence that could even meet the threshold of negligence on behalf of any of the defendants let along the much higher standard of deliberate indifference.  On the contrary, it appears that even though the treatment may not have been as successful as plaintiff hoped, all the defendants carefully considered what treatment would be most productive.  That plaintiff was not cured overnight will not lead to liability. Summary judgment should be granted for all federal claims as to all defendants in the instant motion.

VII.  Qualified Immunity

Because the court has found that the conduct alleged by plaintiff does not state a constitutional deprivation, the court need not address defendants' arguments for qualified immunity.

VIII.  State Law Claims

Plaintiff also alleges state law claims of medical malpractice against the defendants.  Because the claims arising under federal law are being resolved on summary judgment, the court concludes that it is appropriate to decline supplemental jurisdiction over the state law claims.  A district court may decline to exercise supplemental jurisdiction over state law claims when it has "dismissed all claims over which it has original jurisdiction ...." 28 U.S.C. § 1367(c).

\\\\\

1. Accordingly, IT IS HEREBY RECOMMENDED that

1. The November 24, 2009, motion for summary judgment (Doc. 49), be granted and defendants Rad, Chin, Pappoe, Stevenson and Don be dismissed from this action;

2. Plaintiff's state law claims be dismissed without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 06/07/2010

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH: AB
gort3069.sj