1   Dean A. Morehous (SBN: 111841)
    dmorehous@winston.com
2   Nicholas W. Short (SBN: 253922)
    nshort@winston.com
3   WINSTON & STRAWN LLP
    101 California Street, Suite 3900
4   San Francisco, CA 94111-5802
    Telephone:    (415) 591-1000
5   Facsimile:    (415) 591-1400

6   Attorneys for Plaintiff,
    CHARLES ROBERT GORTON
7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11  CHARLES ROBERT GORTON,              Case No. 2:08-CV-03069-LKK-GGH (PC)

12              Plaintiff,              PLAINTIFF CHARLES ROBERT
                                        GORTON'S NOTICE OF MOTION AND
13        v.                            MEMORANDUM IN SUPPORT OF
                                        REQUEST FOR RECONSIDERATION BY
14  K. TODD, R. HAWKINS, K. MARTINEZ, B. THE DISTRICT COURT OF THE
    NALE, S. NASEER, C. SMITH, B.       MAGISTRATE JUDGE'S RULINGS
15  WILLIAMS, H. RAD, A. CHIN, A. PAPPOE, REGARDING EXPERT TESTIMONY
    F. STEVENSON, B. DON.
16                                      Date:         June 20, 2011
                Defendants.             Time:         10:00am
17                                      Courtroom:    4
                                        The Honorable Lawrence K. Karlton
18
                                        Amended Complaint Filed: February 26, 2009
19                                      Trial Date: None Set

20

21

22

23

24

25

26

27

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

# NOTICE OF MOTION

TO DEFENDANTS K. TODD, R. HAWKINS, K. MARTINEZ, B. NALE, S. NASEER, C. SMITH, B. WILLIAMS, H. RAD, A. CHIN, A. PAPPOE, F. STEVENSON, B. DON AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to Title 28 of the United States Code Section 636, Rule 72 of the Federal Rules of Civil Procedure, Rules 303 and 304 of the Eastern District of California Local Rules, and this Court's August 10, 2010 Order (Dkt. No. 83), Plaintiff Charles Robert Gorton will move the Court for an order rejecting Magistrate Judge Hollows' January 21, 2010 Order (Dkt. No. 69), which denied Gorton's requests for a court-appointed medical expert. Specifically, Gorton will move the Court to enter an order appointing a medical expert at the Defendants' expense to assist the Court in determining whether genuine factual disputes exist in connection with Gorton's claim for deliberate indifference to serious medical need.  Plaintiff will also seek an order rejecting Magistrate Judge Hollows' June 7, 2010 legal conclusion (Dkt. No. 75 at p. 11) that the rule announced in *Hutchinson v. United States*, 838 F.2d 390 (9th Cir. 1988) applies to claims for deliberate indifference to serious medical need.

Plaintiff's motion is brought on the grounds that the failure to appoint a medical expert at Defendants' expense would violate Gorton's due process rights under the Fourteenth Amendment of the United States Constitution.  The Magistrate Judge has also misapplied legal precedent, and in doing so, has created an unconstitutional and insurmountable evidentiary burden for indigent *pro se* litigants asserting deliberate indifference claims.  Furthermore, given that the constitutional violation Gorton faces in this case will likely arise again in similar cases, Gorton suggests that the Court promulgate a standing order requiring a pre-trial hearing where the Court determines whether a medical expert must be appointed to preserve an indigent *pro se* litigants' right of access to the courts.

Pursuant to the Court's order (Dkt. No. 110), this matter is scheduled to be heard on June 20, 2011 at on June 20, 2011, at 10:00 a.m. before the Honorable Lawrence K. Karlton, United States

1

1  District Judge, in Courtroom 4 of the United States District Court for the Eastern District of

2  California, located at 501 I Street, Sacramento, California.

3  Dated:  April 11, 2011                    WINSTON & STRAWN LLP

4

5                                      By:    /s/ Nicholas W. Short
                                              Attorney for Plaintiff
6                                             CHARLES ROBERT GORTON

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PL. CHARLES ROBERT GORTON'S NOTICE OF MOTION AND MEMO. IN SUPPORT OF REQUEST FOR RECONSIDERATION BY
THE DISTRICT COURT OF THE MAGISTRATE JUDGE'S RULINGS REGARDING EXPERT TESTIMONY
SF:305664.3

*Winston & Strawn LLP*
*101 California Street*
*San Francisco, CA  94111-5802*

# TABLE OF CONTENTS

Page

QUESTIONS PRESENTED...................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................1

I.      INTRODUCTION ....................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND..............................................2

        A.      The Parties .....................................................................................................2

        B.      Gorton's Kidney Disorders and Treatment....................................................2

        C.      Gorton's Inability to Obtain Necessary Medical Expert Testimony .............3

III.    LEGAL STANDARDS ............................................................................................6

IV.     ARGUMENT ............................................................................................................7

        A.      The Court violated Gorton's due process rights when it denied his requests for
                a court-appointed medical expert....................................................................7

                1.      Gorton has a strong private interest in an accurate proceeding and
                        disposition. ..........................................................................................9

                2.      The risk of erroneous deprivation is high, and a court-appointed
                        medical expert is necessary to protect Gorton's legitimate interest in an
                        accurate trial.......................................................................................10

                3.      The government's interest is purely financial, and the fiscal or
                        administrative burdens involved are minimal....................................13

                4.      The Court should appoint an expert in this case. ...............................13

        B.      The rule requiring expert medical opinion testimony on rebuttal in deliberate
                indifference cases should be overruled.........................................................14

        C.      A pre-trial hearing with explicit consideration of certain issues would help the
                Court determine when it will be necessary to appoint a medical expert. ....16

V.      CONCLUSION.......................................................................................................18

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ake v. Oklahoma*,
  470 U.S. 68 (1985)......................................................................................8, 9, 13, 18

*Armstrong v. Manzo*,
  380 U.S. 545 (1965).....................................................................................................7

*Bounds v. Smith*,
  430 U.S. 817 (1977)............................................................................................8, 9, 13

*Estelle v. Gamble*,
  429 U.S. 97 (1976).......................................................................................................6

*Farmer v. Brennan*,
  511 U.S. 825 (1994).....................................................................................................6

*Hutchinson v. United States*,
  838 F.2d 390 (1988)........................................................................................14, 15, 16

*Jackson v. Bishop*,
  404 F.2d 571 (8th Cir. 1968) .......................................................................................6

*Ledford v. Sullivan*,
  105 F.3d 354 (7th Cir. 1997) .....................................................................................15

*Little v. Streater*,
  452 U.S. 1 (1981)......................................................................................................8, 9

*Mathews v. Eldridge*,
  424 U.S. 319 (1976).................................................................................................7, 8

*McGuckin v. Smith*,
  974 F.2d 1050 (9th Cir. 1992), *rev'd on other grounds, WMX Techs., Inc. v. Miller*, 104
  F.3d 1133 (9th Cir. 1997) ............................................................................................6

*McKinney v. Anderson*,
  924 F.2d 1500 (9th Cir. 1991) .................................................................................7, 12

*Merritt v. Faulkner*,
  697 F.2d 761 (7th Cir. 1983) ....................................................................................8, 9

*Perry v. Schwarzenegger*,
  268 F.R.D. 344 (N.D. Cal. Mar. 22, 2010.) ...............................................................14

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

ii

*Reilly v. Berry*,
   250 N.Y. 456 (1929) ...................................................................................................18

*Rescue Army v. Municipal Court of L.A.*,
   331 U.S. 549 (1947)...................................................................................................14

*Scott v. Spanjer Bros., Inc.*,
   298 F.2d 928 (2d Cir. 1962).......................................................................................16

*South Yuba River Citizens League v. National Marine Fisheries Service*,
   257 F.R.D. 607 (E.D.Cal. May 6, 2009) ...................................................................11

*Spector Motor Service v. McLaughlin*,
   323 U.S. 101 (1944)...................................................................................................14

*Willard v. Hagemeister*,
   121 Cal. App. 3d 406 (1981) .....................................................................................15

*Williams v. MacArthur*,
   No. 3:06-CV-0180, 2007 WL 64169 (D. Nev. Jan. 8, 2007)......................................15

*Windham v. California Dept. of Corrections*,
   No. 05-0954, 2009 WL 57622 (E.D. Cal. Jan. 9, 2009) .......................................15, 16

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 56................................................................................................5, 12, 16

Fed. R. Civ. Proc. 72(a) .................................................................................................14

Fed. R. Civ. Proc. 72(b)(3) .............................................................................................14

Fed. R. Civ. Proc. 706....................................................................................................5, 12

Joe S. Cecil, *Accepting Daubert's Invitation: Defining a Role for Court-Appointed Experts In Assessing Scientific Validity*, 43 Emory L. J. 995, 1011 (1994).........................................16, 17

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

iii

## QUESTIONS PRESENTED

1.      Did the Court violate Gorton's due process rights when it denied his request for a court-appointed expert in light of Gorton's inability, as an indigent *pro se* litigant, to pay for expert testimony?

2.      Under what conditions must a district court grant a request for a court-appointed medical expert in a case for deliberate indifference to serious medical need under the United States Constitution?

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The government has adopted a cynical tactic in this case—a tactic that, if allowed to stand unchecked, will allow the State to dispose of virtually all Eighth Amendment claims for deliberate indifference to serious medical need without a meaningful hearing on the merits of the complaint. Through its tactics, the State blocks an indigent *pro se* prisoner from securing the services of a medical expert during discovery and then cynically claims that the prisoner's complaint must be dismissed at the summary judgment stage because the prisoner cannot support his case with expert testimony. The process that results is not due process.

For the reasons stated herein, the Court should appoint an expert to ensure that the basic facts in Gorton's case are presented and that the matter is resolved on the merits. The Court should also reject the magistrate judge's legal conclusion that Gorton must rebut the State's expert affidavit in order to survive summary judgment. Because the constitutional deprivation the State has caused in this case is widespread, and likely will arise again, the Court should also adopt a pretrial procedure wherein the Court explicitly considers certain factors to determine when it is appropriate to appoint an expert, and when it is absolutely necessary in order to preserve an indigent *pro se* litigant's right of access to the courts.

///

///

///

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties

Charles Robert Gorton is an inmate at Mule Creek State Prison ("Mule Creek") who suffers from a host of kidney disorders including nephrotic syndrome, membranous nephropathy, and chronic kidney disease (stage III).  Gorton sued in December 2008 alleging that the defendants committed medical malpractice and exhibited deliberate indifference to his serious medical needs when they knowingly ignored symptoms of his kidney disorders and / or delayed his diagnosis and treatment causing him to suffer permanent kidney damage.

Defendants are various medical or security personnel at Mule Creek or U.C. Davis Medical Center ("Medical Center") who either provided medical care to Gorton or scheduled or administered his medical care from December of 2006 through August of 2009.  Defendants Rad, Chin, Pappoe, Stevenson, and Don ("Davis Defendants") are affiliated with the Medical Center.  Defendants Smith, Williams, Nale, Hawkins, Naseer, Todd, and Martinez ("Mule Creek Defendants") are employees at Mule Creek.

### B.    Gorton's Kidney Disorders and Treatment

On May 15, 2007, Gorton was rushed to an emergency room at Doctor's Hospital in Manteca suffering from complete renal failure.  (Dkt. No. 10 at p. 13:16-15:13.)  During the months prior to his hospitalization, Gorton filed four separate Health Care Service Requests at Mule Creek urgently requesting medical attention.  (*Id.* at p. 5:16 [Feb. 4]; p. 8:12-14 [Mar. 27]; p. 11:7-9 [May 4]; p. 13:10-15 [May 14]).  He often had to file these requests just to obtain follow-up appointments that had been ordered—but were not actually scheduled—during previous visits with a Mule Creek doctor or nurse.  On two occasions before his hospitalization, Mule Creek medical staff obtained blood and urine analyses indicating that Gorton had a serious kidney disorder:  on March 8, 2007 (*id.* at p. 7:22-8:6), and on May 9, 2007 (*id.* at p. 11:21-12:12).  The second analysis, provided to Mule Creek just five days before Gorton filed his fourth request seeking medical care, explicitly stated that some of Gorton's lab results predicted "progression to overt nephropathy" if left untreated.  (*Id.* at

///

Pl. Charles Robert Gorton's Notice Of Motion And Memo. In Support Of Request For Reconsideration By The District Court Of The Magistrate Judge's Rulings Regarding Expert Testimony

SF:305664.3

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

p. 12:4-7.)[1]  On May 15, 2007, the day after Gorton filed his fourth request, Gorton was seen first by a nurse, then a physician's assistant who noted the need for an "Urgent Nephrotic Consult," and finally a doctor, before he was rushed to an emergency room in a state of "complete renal failure." (*Id.* at p. 13:16-15:13.)

More than a year later, on May 29, 2008, Gorton finally received the immune-suppressant therapy needed to treat his kidney disorders.  (Dkt. No. 10 at p. 35:28-36:2.)  The Mule Creek Defendants contributed to this year-long delay by intentionally scheduling his visits to the Medical Center for consultation with a kidney specialist as "routine" instead of "urgent" (*id.* at p. 15:14-17, 16:2-13; p. 21:1-3; p. 27:14-20) and by failing to obtain medical reports from his hospitalization in Manteca and from his visits to the Medical Center which caused yet further delays and confusion during subsequent appointments.  (*Id.* at p. 18:2-3; p. 24:11-16; p. 25:27-26:1.)  Gorton's condition indisputably worsened during this time.  (*Id.* at p. 22:8-12; p. 29:9-12.)  Gorton also warned the Mule Creek Defendants of his fear that the delays would cause him to "suffer permanent damage to [his] vital organs."  (*Id.* at p. 21:13-15.)  His concerns were anything but fanciful:  an internal review panel validated Gorton's appeal for treatment and ordered the Mule Creek Defendants to "ensure [that] appellant is seen by the nephrologist as soon as possible and [that] the appropriate laboratory results are provided to ensure a diagnosis or treatment plan."  (*Id.* at p. 28:1-9.)  The Davis Defendants also recognized the need for prompt treatment, but contributed to the delay by failing to review and sign their medical reports promptly so that they could be forwarded to Mule Creek.  (*Id.* at p. 24:19-27; p. 28:24-29:21; p. 30:25-31:17; p. 30:25-31:3; p. 33:11-16.)

**C.    Gorton's Inability to Obtain Necessary Medical Expert Testimony**

Gorton filed his initial complaint on December 18, 2008, together with an application to proceed *in forma pauperis*.  (Dkt. Nos. 1, 2.)  Gorton also moved the Court to appoint counsel and alleged that he "does not have any financial resources to secure the testimony of expert witnesses." (Dkt No. 30 at p. 1.)  Magistrate Judge Hollows denied the request finding no exceptional circumstances.  (Dkt. No. 35).

---

[1] "Nephropathy" is an extremely serious kidney disorder which causes kidney damage and impairs kidney function.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

During discovery, Defendants actively prevented Gorton from securing the services of an expert and from discovering the essential facts of his case. Defendants also made it clear that much of their defense was based on scientific and medical expert testimony. Gorton propounded special interrogatories on the Davis Defendants seeking to discover the basis for the delay in his treatment after his hospitalization on May 15, 2007. One interrogatory in particular—propounded to Davis Defendants Chin, Stevenson, Pappoe—recited symptoms from his own medical file and asked each doctor how soon a person exhibiting those symptoms should be referred to a nephrologist. (Declaration of Nicholas Short ["Short Decl."] Ex. A [Interrog. No. 8 to Chin]; Ex. B [Interrog. No. 6 to Stevenson]; Ex. C [Interrog. No. 6 to Pappoe].) The Davis Defendants objected and refused to respond to these (and other) interrogatories on grounds that the questions called for expert opinion testimony. (Short Decl., Exs. D-F [responses]; see also Ex. G [Don's Response to Interrog. Nos. 16, 18-19]; Ex. H. [Rad's response to Interrog. Nos. 20, 22-25 (Second Set)].)

Gorton moved to compel Dr. Chin's and Dr. Stevenson's response to these interrogatories. (Dkt. No. 58 at p. 3:18-5:24, p. 15:17-16:26; see also p. 10:9-11:10.) In response to Gorton's motion, the Davis Defendants maintained that Drs. Chin and Stevenson were "unqualified to answer the question" and that "Plaintiff is seeking expert opinion before the disclosure of expert [sic] and is improperly asking an expert opinion from a person not disclosed as an expert." (Dkt. No. 58 at p. 5:10-13, p. 16:13-17.) Judge Hollows denied Gorton's motion with respect to these interrogatories on grounds that a plaintiff may not ask a fact witness to "opine on expert matters in an abstract or hypothetical sense," and that if the rule were any different, "any party to a litigation could hi-jack in-house or third party experts for free, and compel them to give the retained Rule 26 experts' testimony they would otherwise have to pay for." (Dkt. No. 68 at p. 2:14-19.)

Before Magistrate Judge Hollows denied Gorton's motion to compel, the Davis Defendants moved for summary judgment based on the expert affidavit of Lewis L. Haut (Dkt. Nos. 41, 49, 49-9.)[2] Setting up a classic "Catch-22," the Davis Defendants argued that Gorton was required to

---

[2] The Mule Creek Defendants filed their motion for summary judgment on April 30, 2010. (Dkt. No. 71.) It also relies on Haut's affidavit. (See, e.g., Dkt. No. 71 at 12:11-20 arguing that Gorton Defendants caused no injury to Gorton during the relevant time period.)

4

support his opposition with an expert affidavit because, "[i]n cases involving complex medical issues, expert testimony is necessary to address whether deliberate indifference is present." (Dkt. No. 49-1 at p. 9:5-18.)  As he had indicated from the very outset of the lawsuit, Gorton could not afford to retain a medical expert, so he filed multiple requests for a court-appointed medical expert witness under Rule 706 of the Federal Rules of Evidence.  (Dkt Nos. 53, 56, 61.)  In those requests, Gorton re-iterated that he is indigent and "is not able to afford the costs of retaining the services of a licensed medical expert, trained in the field of nephrology." (*Id.*)  Gorton additionally requested an extension under Rule 56 to obtain an expert declaration to file in opposition to summary judgment.  (Dkt. No. 61.)

Because Defendants had expressly based their motion on the absence of expert testimony in support of Gorton's case, Gorton also argued that he needed the services of a court-appointed expert to meaningfully oppose the motion.  (Dkt. No. 63 at p. 1:14-2:11.)  Notwithstanding their refusal to answer Gorton's discovery on the basis that his interrogatories called for expert opinion testimony, the Davis Defendants opposed Gorton's request and disingenuously argued that "[t]he matters set forth in this case are not so complex in that it would require a court to have an expert to understand the issues at hand." (Dkt. No. 60 at p. 3:16-18.)  That position, of course, directly contradicts the position the Davis Defendants took in their motion for summary judgment.  (Dkt. No. 49-1 at p. 9:5-18.)

Judge Hollows denied Gorton's requests for a court-appointed expert (Dkt. No. 69) and recommended that the District Judge grant the Davis Defendants' motion for summary judgment in part because, under Ninth Circuit precedent, deliberate indifference claims "almost always" require expert medical testimony "to establish the necessary level of deliberate indifference." (Dkt. No. 75 at p. 11:6-15.)  Gorton timely objected to Judge Hollows' findings and recommendations, and again repeated his need for a court-appointed expert in order to proceed meaningfully.  (Dkt. No. 78 at p. 1:24-3:6.)  Specifically, Gorton argued that "he was doomed to fail even before he started the process of filing suit," and that "[t]his is an unfair advantage in favor of the defendants, who have the financial power to secure their Expert Witness." (Dkt No. 78 at p. 2:15-20.)

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

On August 10, 2010, Judge Karlton noticed that indigent *pro se* litigants in Gorton's position might never be able to successfully litigate cases such as the one at bar, and that Gorton's inability to proceed in this case in a meaningful manner "seems to implicate serious constitutional rights." (Dkt. No. 83.)  Judge Karlton appointed limited counsel for briefing on that subject.  (Dkt No. 105.)

## III.    LEGAL STANDARDS

Gorton's claim that Defendants acted with deliberate indifference to his serious medical needs arises under the Eighth Amendment, which obligates the government to provide medical care to inmates and prohibits the government from providing that care in such a way that it violates the Amendment's "'broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . .'"  *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968)).  A prison doctor therefore violates the Eighth Amendment when he or she intentionally denies or delays access to medical care or intentionally interferes with prescribed treatment.  *Id.* at 104-105.

To determine whether a prison official has violated the Eighth Amendment the Court must examine two elements.  The first element is whether the inmate has a serious medical need.  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997).  "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'."  *Id.* (citing *Gamble*, 429 U.S. at 104).

The second element is whether the prison official responded to that medical need with "deliberate indifference," which requires proof of the official's subjective intent or state of mind.  *Id.* at 1060; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.'").  A defendant acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 837, 848.  A plaintiff must generally create an inference that the defendant acted with deliberate indifference by relying on various kinds of indirect or circumstantial evidence.  While deliberate acts that impede or slow an inmate's access to care are

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1  powerful direct proof, such evidence is understandably rare. Many deliberate indifference claims

2  therefore depend heavily on a combination of proof showing that prison medical staff denied access

3  to necessary care or failed to follow accepted standards for providing treatment. *See*, *e.g.*, *McKinney*

4  *v. Anderson*, 924 F.2d 1500, 1503-1509 (9th Cir. 1991) (describing complexity of proof needed to

5  prove that exposure to environmental tobacco smoke posed an unreasonable risk to prisoner's

6  health).

7  **IV.    ARGUMENT**

8          The Court violated Gorton's due process rights when it denied his repeated requests for a

9  court-appointed medical expert. The Court's ruling effectively prevents Gorton—and any other

10  indigent *pro se* litigant in Gorton's situation—from obtaining relief on a deliberate indifference

11  claim. Because Gorton's constitutional right of access to the courts has been violated, the Court

12  should enter an ordering granting his request for a court-appointed medical expert. The Court should

13  also clarify that, while expert opinion testimony may be extremely valuable in evaluating deliberate

14  indifference claims, such testimony is not invariably required in every case to survive a summary

15  judgment motion. Additionally, since the problem raised in this case is systemic and will likely arise

16  again, the Court should formulate a standing order establishing an early pre-trial procedure to more

17  thoroughly address these issues and to determine whether the Court must appoint a medical expert in

18  order to preserve an indigent pro se litigant's right of access to the courts.

19          **A.    The Court violated Gorton's due process rights when it denied his requests for a**

20                 **court-appointed medical expert.**

21          Unlike some other legal doctrines, due process is not a rule of fixed content, but is a flexible

22  doctrine that must be adapted to the specific situation at hand. *Mathews v. Eldridge*, 424 U.S. 319,

23  334 (1976). On the most fundamental level, it requires that courts guarantee to any person an

24  "opportunity to be heard 'at a meaningful time and in a meaningful manner'" before the government

25  deprives that person of life, liberty, or property. *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S.

26  545, 552 (1965)).

27

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

7

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

When it comes to guaranteeing that right for the poor and indigent, due process effectuates the long-held and cherished belief "that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake." *Ake v. Oklahoma*, 470 U.S. 68, 76 (1985).  Due process not only guarantees that right to criminal defendants, but also to inmates seeking to vindicate important constitutional rights and to other civil defendants in cases with "'quasi-criminal' overtones." *Bounds v. Smith*, 430 U.S. 817, 827 (1977); *Little v. Streater*, 452 U.S. 1, 9 (1981) (ordering state to provide blood test where civil paternity suit had quasi-criminal overtones).  As a result, since 1977, it has been "established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds*, 430 U.S. at 821.

"'Meaningful access' to the courts is the touchstone," and meaningful access requires more than "mere access to the court house doors." *Bounds*, 430 U.S. at 823; *Ake*, 470 U.S. at 77.  Instead, meaningful access requires that the Court identify the "raw materials" or "basic tools" that an indigent litigant needs to present his or her case or defense, and guarantee "that such tools be provided to those defendants who cannot afford to pay for them." *Ake*, 470 U.S. at 77.  In certain circumstances, the right of access requires the Court to waive fees, provide trial transcripts, appoint counsel, and ensure that appointed counsel provides effective assistance. *Ake*, 470 U.S. at 76.  The right of access also requires that the State "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in law." *Bounds*, 430 U.S. at 828; *see also Merritt v. Faulkner*, 697 F.2d 761, 764 (7th Cir. 1983).

In determining whether there has been a due process violation, the Court must consider three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 334-335; *Ake*, 470 U.S. at 77.

An assessment of these factors, in the specific factual scenario presented here, shows that the Court has deprived Gorton of meaningful access to the courts.

> **1.     Gorton has a strong private interest in an accurate proceeding and disposition.**

The private interest at risk, in this case, is Gorton's interest in the accuracy of a proceeding which is meant to vindicate important constitutional rights.  *See Ake*, 470 U.S. at 78 (noting that, in a proceeding "that places an individual's life or liberty at risk," this interest "is almost uniquely compelling").  Cases such as this one "are of 'fundamental importance . . . in our constitutional scheme' because they directly protect our most valued rights."  *Bounds*, 430 U.S. at 827.  The factual and legal issues in cases that present constitutional questions, such as this one, can be even more complex than in some criminal cases, giving rise to a heightened private interest in "ensuring the efficacy and accuracy of the factfinding process."  *Merritt v. Faulkner*, 697 F.2d 761, 764 (7th Cir. 1983) (appointing counsel to an indigent *pro se* litigant on a deliberate indifference claim, despite the well-established rule that such litigants have no absolute right to counsel).  Gorton's interest in an accurate proceeding is thus well-established and strongly valued.

While not strictly necessary as an evidentiary matter,[3] as a practical matter, an expert opinion can be extremely useful (as it is here) in helping the Court to determine a case based on its factual merits, and not on the government's legal gamesmanship.  The importance of experts in evaluating and interpreting complex information for the fact-finder in cases involving medical or mental health history cannot be overstated.  *Ake*, 470 U.S. at 81.  Medical experts, on both sides, "enable the jury to make its most accurate determination of the truth on the issue before them."  *Id.*; *see also Little*, 452 U.S. at 6-8 (importance of scientific evidence in determining the truth is heightened in situations without accurate eyewitnesses and where "self-serving testimony of a party is of questionable reliability").  In cases such as this one—where it is unlikely the defendants will produce direct proof of deliberate indifference—medical expert testimony is critical for an accurate adjudication on the merits.

---

[3] As argued below, the evidentiary rule requiring expert opinion testimony that the Court utilized, in this case, is a misapplication of state law concerning negligence claims.

9

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

2.      **The risk of erroneous deprivation is high, and a court-appointed medical expert is necessary to protect Gorton's legitimate interest in an accurate trial.**

Though working with virtually no resources, Gorton has established that his claim has *prima facie* merit. His medical condition was serious enough to cause at least one hospitalization due to kidney failure, and the hospitalization occurred more than two months after Mule Creek obtained initial blood work suggesting that Gorton had a serious kidney disorder (Dkt. No. 10 at p. 7:22-8:6), and six days after Mule Creek obtained an additional blood and urine analysis stating that that some of Gorton's results were "a good predictor of progression to overt nephropathy." (Dkt. No. 10 at p. 11:21-12:12, 13:16-15:13.) More than a year passed after Gorton's hospitalization before he received the basic immunosuppressant therapy he needed for treatment, and he has detailed the specific acts the Mule Creek and Davis Defendants took which led to the delay—all while the same doctors counseled Gorton that delays in treatment could lead to permanent kidney damage. (*Id.* at p. 29:5-8, 35:28-36:2.) Gorton took an active role in trying to obtain more prompt and immediate care, despite the Defendants' obstruction, and even prevailed on an internal appeal where Mule Creek officials agreed that Gorton must be seen by a "nephrologist as soon as possible" and that the laboratory results must be promptly returned "to ensure a diagnosis or treatment plan." (*Id.* at p. 28:1-9.) A medical expert would be extremely useful in evaluation these kinds of facts, and could very easily yield an inference supporting Gorton's deliberate indifference claim given the inordinate one-year delay Defendants caused in this case.

Despite the factual and legal plausibility of Gorton's claim, his case cannot proceed any further without expert testimony. Testimony on the following subjects—which Gorton has attempted to elicit throughout the case—is essential, at a minimum[4], for the case to meaningfully proceed:

---

[4] This case involves many allegations against many defendants arising from multiple hospital visits and medical appointments. As the first step, and without waiving the right to request additional testimony, Gorton's initial request is limited to these basic subjects.

10

- Whether the blood and urine analysis results delivered to Mule Creek on March 8 and May 9, 2007 show, in light of his medical history, that Gorton faced a substantial risk of permanent kidney damage prior to his hospitalization (on May 15, 2007).

- Whether Gorton faced a substantial risk of permanent kidney damage, as of May 18, 2007 (when he returned to Mule Creek), if he could not obtain: (a) a kidney biopsy until January 28, 2008; (b) a colonoscopy until May 28, 2008; or (c) a prescription for immunosuppressant therapy until May 29, 2008.

- Whether Gorton suffered permanent kidney damage between March 8, 2007 and May 29, 2008.

Gorton's case is at a critical cross-roads. Without the assistance of a court-appointed expert, he is doomed to fail even though he has attempted to acquire the information he needs to prove his case through every possible avenue. Many of the defendants are doctors or kidney specialists (nephrologists), and Gorton attempted to elicit opinion testimony about the proper course of treatment based on the facts of his own case. His attempts were frustrated, however, by Defendants' objections that the questions he posed in discovery called for an expert opinion. Gorton then requested that the Court compel Defendants to answer the questions anyway, but the Court rejected Gorton's request, in part because the Court felt that Gorton should not be allowed to "hi-jack in-house or third party experts for free, and compel them to give the retained Rule 26 experts' testimony they would otherwise have to pay for." (Dkt. No. 68 at p. 2:14-19.) The Davis Defendants then submitted the expert declaration of Lewis L. Haut (Dkt. No. 49-9) in support of their motion for summary judgment, which Judge Hollows considered in his recommendation to grant the motion. (See Dkt. No. 75 at p. 5:1-8:21, describing the "undisputed facts" from Dkt. No. 49-2 which rely on Haut Declaration, and p. 11:6-15 stating that Gorton must provide rebuttal expert evidence to survive summary judgment). The Court did not consider whether Gorton had the means to depose Dr. Haut, to challenge or otherwise examine the basis for his expert opinion, nor did it consider whether the declaration should be stricken because Gorton was deprived of that opportunity. *See South Yuba River Citizens League v. National Marine Fisheries Service*, 257

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

F.R.D. 607, 611 (E.D.Cal. May 6, 2009) (Karlton, J.) (describing cases where unopposed expert affidavits on summary judgment led to an opportunity to depose the expert or an order striking the affidavit).

Finally, Gorton requested (on multiple occasions) a court-appointed medical expert under Rule 706 of the Federal Rules of Evidence, and an extension of time under Rule 56 of the Federal Rules of Civil Procedure in order to obtain a rebuttal expert declaration. (Dkt Nos. 53, 56, 61.) Under existing Ninth Circuit authority, the Court has broad discretion to appoint a medical expert, and to apportion costs to the Defendants. *McKinney v. Anderson*, 924 F.2d 1500, 1510-1511 (9th Cir. 1991), *aff'd on other grounds Helling v. McKinney*, 509 U.S. 25 (1993). The Court has that authority because an inflexible rule requiring both parties to pay "would prevent the district court from appointing an expert witness whenever one of the parties in an action is indigent, even when the expert would significantly help the court." *Id.* at 1511. In support of his requests for a court-appointed expert, Gorton re-iterated that he is indigent and "is not able to afford the costs of retaining the services of a licensed medical expert, trained in the field of nephrology." (*Id.*) Astonishingly, the Davis Defendants—who had just represented to the Court that this is a case "involving complex medical issues" where "expert testimony is necessary to address whether deliberate indifference is present"—turned around and opposed Gorton's request for a court-appointed expert on grounds that "[t]he matters set forth in this case are not so complex in that it would require a court to have an expert to understand the issues at hand." (Dkt. No. 60 at p. 3:16-18). Magistrate Judge Hollows denied Gorton's request, without a hearing, on grounds that "[a]t this time, appointment of a medical expert is not warranted." (Dkt. No. 69.)

Fundamental fairness demands that the Court bar the government from such duplicity. These tactics seriously implicate fundamental due process rights and create the potential for widespread abuse of the judicial system, to say nothing of the contempt it shows for litigants in Gorton's position. (See also Dkt. No. 71-1 at p. 17:19-20 and 25:22-23, referring to Gorton's claims as a "figment of his unqualified imagination" and his fear for his health as "obsessive"). The Court should not sanction such tactics by allowing them to succeed, as they almost did in this case.

Given the procedural posture of Gorton's case, the merits of his complaint, and his need for expert assistance to proceed meaningfully, there is an extremely high risk that the government could erroneously and unconstitutionally deprive Gorton of his legitimate interest in a fair and accurate proceeding by denying his request for a court-appointed medical expert.

**3.    The government's interest is purely financial, and the fiscal or administrative burdens involved are minimal.**

The government's interest in this case is purely financial, which is not sufficient, of itself, to impinge on Gorton's right of access to the courts. While economic factors may be considered, "the cost of protecting a constitutional right cannot justify its total denial." *Bounds*, 430 U.S. at 825; *Ake*, 470 U.S. at 79 (1985) ("At the same time, it is difficult to identify any interest of the State, other than that in its economy, that weighs against recognition of this right."). Importantly, while the facts of this case indicate that the court should appoint a medical expert and apportion costs to Defendants, a court-appointed medical expert will not be necessary in every deliberate indifference case (as discussed below). In other cases, the Court could avoid some of the constitutional issues raised here by clarifying the differences between deliberate indifference claims and negligence claims, and how those differences affect the parties' relative burdens at the summary judgment stage (see Section B below). The Court could also evaluate such claims more closely during a pretrial hearing, or at the Rule 26 conference, to determine whether a court-appointed expert will be necessary (see Section C below). When the government signals its intent to defend on the basis of expert testimony (or the absence thereof), a strong preference should exist in favor of appointing an independent expert to assist the Court. These efforts would impose very limited fiscal or administrative burdens on the court system, and to the extent judges can narrow the disputed issues or facilitate agreement on the necessity or role of expert testimony in deliberate indifference cases, these efforts could streamline such cases and lead to more efficient adjudication.

**4.    The Court should appoint an expert in this case.**

Gorton has come before the Court seeking to show that Defendants' deliberate indifference to his kidney conditions caused him serious injury, and may have even taken years of life away from

13

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1   him.  He is caught in a legal quagmire, not of his own making, and he has tried to pursue every

2   means available to him to present his case to the Court.  The only option left to achieve

3   "fundamental fairness" and preserve Gorton's right of access is for the Court to appoint an expert to

4   assist the Court in deciding the facts and determining the merits.  Pursuant to Eastern District of

5   California Local Rule 303, Gorton therefore requests that the Court modify Judge Hollows' Order

6   accordingly.[5]

7       **B.      The rule requiring expert medical opinion testimony on rebuttal in deliberate**

8               **indifference cases should be overruled.**

9       In cases such as this one, the Court can inflict a severe constitutional injury where it couples

10  its refusal to appoint an expert with an evidentiary rule requiring expert testimony in order to survive

11  summary judgment and proceed to trial.  (See Dkt. No. 75 at p. 11:6-15.)  This is the constitutional

12  "Catch-22" at the heart of numerous deliberate indifference cases.  Moreover, the Court imposes this

13  evidentiary rule even though the underlying claim seeks to enforce highly valued constitutional

14  rights.  The evidentiary rule—which the Defendants and the Court apparently derived from

15  *Hutchinson v. United States*, 838 F.2d 390 (9th Cir. 1988)—has no legal basis, and the Court can

16  remedy some of the harm the rule causes by entering an order, pursuant to Local Rule 304, finding

17  the rule contrary to law.[6]  *See Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. Mar. 22,

18  2010.) ("The magistrate's legal conclusions are reviewed de novo to determine whether they are

19  contrary to law.")

20      In *Hutchinson*, the plaintiff—who spent less than two weeks at a federal correctional

21  center—sued the prison doctors who provided her medical care during her incarceration for

22  negligence, under the Federal Tort Claims Act, and for deliberate indifference under the Fifth and

---

23  [5] In conjunction with Judge Hollows' interpretation of *Hutchinson v. United States*, 838 F.2d 390
24  (1988) (see Section B), the Order denying Gorton's request for a medical expert was effectively
    dispositive and should be reviewed *de novo*.  Fed. R. Civ. Proc. 72(b)(3).  However, given the
25  serious constitutional implications, the Court can still reject the Order as "clearly erroneous or
    contrary to law."  Fed. R. Civ. Proc. 72(a); Eastern Dist. Of Cal. Local Rule 303(f).
26  [6] By clarifying the law in this area, the Court can remedy the injury this rule creates on non-
    constitutional grounds.  *Spector Motor Service v. McLaughlin*, 323 U.S. 101, 105 (1944) ("If there is
27  one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that
    we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable.");
28  *accord Rescue Army v. Municipal Court of L.A.*, 331 U.S. 549, 568 (1947).

14

PL. CHARLES ROBERT GORTON'S NOTICE OF MOTION AND MEMO. IN SUPPORT OF REQUEST FOR RECONSIDERATION BY
THE DISTRICT COURT OF THE MAGISTRATE JUDGE'S RULINGS REGARDING EXPERT TESTIMONY
SF:305664.3

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Eighth Amendments. 838 F.2d at 391-392. The district judge granted summary judgment in favor of all defendants. *Id.* at 392. On appeal, the Ninth Circuit noted that California medical malpractice law applied to the plaintiff's *negligence* claim, and that California law required that the standard of care be proven through expert testimony. *Id.* As a result, the Court adopted and applied the rule that, "[w]hen a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence." *Id.* (citing *Willard v. Hagemeister*, 121 Cal. App. 3d 406, 412 (1981)).

In analyzing the plaintiff's *deliberate indifference* claim, however, the Court noted that the plaintiff had the burden of proving subjective intent beyond "mere negligence," but it did *not* apply the same state-law evidentiary rule it applied to the plaintiff's negligence claim. *Id.* at 394. In doing so, the Court implicitly acknowledged that deliberate indifference claims are fundamentally different from medical malpractice and negligence claims. Specifically, deliberate indifference claims require a showing of subjective intent—a knowing disregard or indifference to a serious medical condition—where negligence claims require a more detailed inquiry into whether a medical professional's conduct fell within an objective standard of care in the community. *Ledford v. Sullivan*, 105 F.3d 354, 359 (7th Cir. 1997) ("The test for deliberate indifference is not as involved as that for medical malpractice, an objective inquiry that delves into reasonable standards of medical care."). Ironically, that same distinction is often used to *deny* an indigent litigant's request for a court-appointed medical expert on grounds that such expert testimony is not necessary. *Ledford*, 105 F.3d at 360; *Williams v. MacArthur*, No. 3:06-CV-0180, 2007 WL 64169, 2 (D. Nev. Jan. 8, 2007) ("Similarly, expert testimony is not required in determining whether Defendants acted with deliberate indifference.").

By misapplying *Hutchinson* and adopting a rule requiring expert testimony, Defendants and the Court have improperly imported an evidentiary burden that only applies to negligence claims into the *prima facie* case of deliberate indifference claims. *See Windham v. California Dept. of Corrections*, No. 05-0954, 2009 WL 57622 at *7 (E.D. Cal. Jan. 9, 2009) (Hollows, J.)

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1   ("Superimposed on these Eighth Amendment standards is the fact that in cases involving complex

2   medical issues where plaintiff contests the type of treatment he received, expert opinion will almost

3   always be necessary to establish the necessary level of deliberate indifference.") (citing *Hutchinson*,

4   838 F.2d at 390); Davis Defendants' Memo. Pts. And Auth. In Support of Summary Judgment

5   (Dkt. No. 49-1) at 9:5-18 (quoting *Windham*, 2009 WL 57622 at *7).   Accordingly, and in light of

6   the constitutional issues addressed above, the Court should reject Magistrate Judge Hollows' legal

7   finding that "unless plaintiff can provide expert evidence that the treatment he received equated with

8   deliberate indifference thereby creating a material issue of fact, summary judgment should be

9   entered for defendants."   (Dkt. No. 75 at 11:9-12).   Through a written order, the Court should clarify

10  that the evidentiary burden articulated in *Hutchinson v. United States*, 838 F.2d 390 (9th Cir. 1988)

11  applies to negligence claims, not deliberate indifference claims, and while expert opinion testimony

12  may be relevant to the merits of deliberate indifference claims, such claims must be tested under

13  Rule 56 subject to the normal rules pertaining to summary judgment motions.[7]

14  **C.    A pre-trial hearing with explicit consideration of certain issues would help the**

15  **Court determine when it will be necessary to appoint a medical expert.**

16  "[T]he appointment of an impartial medical expert by the court in the exercise of its sound

17  discretion is an equitable and forward-looking technique for promoting the fair trial of a lawsuit."

18  *Scott v. Spanjer Bros., Inc.*, 298 F.2d 928, 931 (2d Cir. 1962).   A 1988 survey of federal district

19  court judges found that thirteen of forty-five judges who appointed an expert on one occasion did so

20  because "one of the parties failed to offer expert testimony, resulting in what the judge perceived to

21  be an inadequate presentation of issues." Joe S. Cecil, *Accepting Daubert's Invitation:  Defining a*

22  *Role for Court-Appointed Experts In Assessing Scientific Validity*, 43 Emory L. J. 995, 1011 (1994).

23  The same survey found that, out of respect for the adversarial system, many judges were likely to

24  "appoint an expert only where the adversarial process has failed," as it has in this case.  *Id.* at 1018.

25  Other indigent *pro se* inmates asserting deliberate indifference claims will find themselves in this

26  _____

27  [7] Expert testimony suggesting that the care Gorton received was below the accepted standard of care
    would support an inference that Defendants were indifferent to his medical needs.  However, a
    plaintiff need not invariably produce such evidence to survive a dispositive motion or otherwise
28  reach a jury on his claim.

                                              16

same position, in need of some sort of neutral expert assistance.  A pretrial procedure "based on early identification of issues likely to require expert testimony, specification of disputed issues of science and technology, and screening of expected testimony . . . will diminish the difficulties that arise when a judge determines that appointment of an expert is appropriate." *Id.* at 1054.  Such a procedure would also protect the indigent *pro se* litigant's right of access to the courts without imposing substantial financial or administrative burdens on the court system.

In light of the constitutional issues addressed above, cases such as this one would benefit from a pre-trial hearing or similar procedure—whether held as a result of a motion for a court-appointed expert or pursuant to the Court's own order or as a matter of routine at the Rule 26 status conference—where the Court addresses, at a minimum, the following factors:

- Whether, under the facts and theories of the case, expert opinion testimony will assist the trier of fact or advance a complete and accurate presentation of the issues for the court's benefit.

- Whether the parties intend to submit expert declarations on summary judgment or call an expert witness to testify at trial, and the scope of any such testimony.

- Whether a defendant will assert an absence of expert testimony as a defense.

- How the Court will deal with an expert declaration in support of a motion for summary judgment, and whether the Court will consider the declaration if an indigent *pro se* litigant is not able to depose the expert.

- Whether the Court should hold a separate hearing to determine the admissibility of any such testimony as part of its gate-keeping role.

- Whether the parties will consent to a court-appointed expert, and under what terms.

In order to comply with the Constitution, a district court must grant a request for a court-appointed expert (or order one using its own discretion) if, after considering the factors above, a refusal to appoint an expert would risk an erroneous deprivation of the indigent litigant's right to a meaningful and accurate trial.  The Court should appoint an expert where, as here, the plaintiff has made a minimal showing of *prima facie* merit, the government has obstructed discovery of key facts

17

on grounds that a question or request calls for expert opinion testimony, the government has submitted its own expert affidavit or testimony, and a court-appointed expert would assist the Court or the judge or the trier of fact in deciding the case on the merits.

## V.    CONCLUSION

"[U]pon the trial of certain issues, such as insanity or forgery, experts are often necessary both for prosecution and for defense.  In these and like cases, a [litigant] may be at an unfair disadvantage if he is unable because of poverty to parry by his own witnesses the thrusts of those against him."  *Reilly v. Berry*, 250 N.Y. 456, 461 (1929) (Cardozo, J.) (quoted in *Ake*, 470 U.S. at 82 n.8).  That "unfair disadvantage" becomes a constitutional violation where an indigent *pro se* litigant seeks to vindicate important constitutional rights and where the government games the system to dispose of the case without an accurate determination of the merits.  Because Gorton has been "denied the opportunity to participate meaningfully in a judicial proceeding in which his [life and] liberty is at stake," simply as a result of his poverty, the Court should grant the relief requested.  *Ake*, 470 U.S. at 76.

Dated:  April 11, 2011                    WINSTON & STRAWN LLP


                                          By:   /s/ Nicholas W. Short
                                                Attorney for Plaintiff
                                                CHARLES ROBERT GORTON

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802