UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES ROBERT GORTON,

          NO. CIV. S-08-3069 LKK/GGH P

      Plaintiff,

   v.                 O R D E R

TODD, et al.,         **TO BE PUBLISHED**

     Defendants.

_____/

    Plaintiff, an indigent prisoner who was initially proceeding with limited representation for the purposes of this motion, brings claims against prison medical officers and U.C. Davis Medical Center physicians contending that their treatment of his kidney disorders fell below constitutional adequacy. Plaintiff requested appointment of a medical expert, which was denied by the Magistrate Judge. The Magistrate Judge subsequently recommended that this court grant summary judgment for the U.C. Davis defendants largely due to the lack of expert testimony supporting plaintiff's claims.

1

This court denied their motion for summary judgment without prejudice and sought volunteer counsel to represent plaintiff on the limited question of whether his constitutional rights were offended by the Magistrate Judge's denial of his request for appointment of a medical expert. At oral argument, counsel appointed for plaintiff indicated that they intend to continue representing him following resolution of this motion.

For the reasons discussed below, the court determines that the Magistrate Judge's denial of plaintiff's request for appointment of an impartial expert witness was clearly erroneous, but nonetheless declines to appoint an impartial witness because plaintiff's counsel can move for reimbursement of expert witness costs from this court's non-appropriated fund.

**I. BACKGROUND**

On December 18, 2008, plaintiff Charles Robert Gorton ("plaintiff" or "Gorton") filed a complaint against numerous medical providers at Mule Creek State Prison ("state defendants") and U.C. Davis Medical Center ("U.C. Davis defendants")[1] (Doc. No. 1.) Gorton alleged that these defendants violated his constitutional rights under the Eighth Amendment by delaying treatment and otherwise providing inadequate treatment of his kidney disorders, which allegedly caused him pain and suffering as well as permanent damage to his health. (<u>Id.</u>) Plaintiff also filed

---

[1] The court notes that the parties in plaintiff's original complaint were adjusted through an amended complaint in order to comply with pleading requirements.

1  an application to proceed in forma pauperis along with his

2  complaint. (Doc. No. 2.) He declared that he has minimal, if any,

3  assets and the California State Prison-LAC account clerk certified

4  that Gorton had no money in his account at the prison, his average

5  monthly balance over the last six months was $32.48, and the

6  average of monthly deposits to his account was $24.94. (Id.)

7  Gorton's request to proceed in forma pauperis was subsequently

8  granted. (Doc. No. 7.) On February 26, 2009, plaintiff filed his

9  amended complaint. (Doc. No. 10). This amendment corrected several

10  pleading errors in Gorton's original complaint and the Magistrate

11  Judge then ordered service upon defendants. (Doc. No. 11.)

12      On May 28, 2009, the Magistrate Judge entered a discovery and

13  scheduling order following an answer from four of the U.C. Davis

14  defendants. (Doc. No. 21.) Discovery was scheduled to close on

15  September 18, 2009. (Id.) The scheduling order made no reference

16  to expert discovery. (Id.) On August 4, 2009, the Magistrate Judge

17  entered an order setting the deadline for completion of discovery

18  between Gorton and a U.C. Davis defendant who had only recently

19  been served to November 6, 2009. (Doc. No. 28.)

20      On June 30, 2009, Gorton propounded his first set of

21  interrogatories on U.C. Davis defendants Dr. Andrew Chin,

22  Dr. Frazier Stevenson and Dr. Pappoe. (Exs. A, B, C to Pl. Mtn.

23  Reconsideration, Doc. No. 111-1.) Among several requests,

24  plaintiff propounded the following interrogatory on these

25  defendants:

26  ///

> Suppose a person begins to exhibit the following symptoms: [ ¶ ] (3+ pitting edema bilaterally in the feet and legs; 3+ pitting edema up to the abdomen; 2+ pitting edema in the left arm and hand; shortness of breath, orthopne and weakness; [lab results] = albumin (serum) - 2.0 . . . UA [urinalysis] - 3+ proteinuria; microalbumin - 2,311; microalbumin to creatinine ration - 3,040.70). [ ¶ ] Considering these symptoms and in your professional opinion, how soon (days/weeks) should that person be referred to a Nephrologist for consult?

Plaintiff has represented that these symptoms were drawn from his own medical file. (Pl.'s Mot. Recons., Doc. No. 111, at 10.) On August 14, 2009, Dr. Chin, Dr. Stevenson, and Dr. Pappoe all refused to answer this interrogatory on the grounds that it called for expert testimony. (Exs. D, E, F to Pl. Mtn. Reconsideration, Doc. No. 111-1.) On December 15, 2009, Gorton moved to compel Dr. Chin's and Dr. Stevenson's responses to this interrogatory, among other issues. (Doc. No. 58.) They argued that they should not be compelled to answer the interrogatory because, "Plaintiff is seeking expert opinion before the disclosure of expert [sic] and is improperly asking an expert opinion from a person not disclosed as an expert." (Id.) On January 14, 2010, the Magistrate Judge denied plaintiff's motion to compel responses to this interrogatory on the grounds that plaintiff is not permitted to ask Dr. Chin and Dr. Stevenson "hypothetical expert questions." (Doc. No. 68.)

On August 27, 2009, plaintiff moved for appointment of counsel. (Doc. No. 30.) He argued that appointment of counsel was appropriate because, *inter alia*, (1) "The legal and medical issues involved in this case are complex and involve medical knowledge and expertise of which Plaintiff does not have. . . ;" (2) "The

4

1  Plaintiff has no formal legal or medical training, [and] therefore
2  lacks the necessary expertise to successfully litigate this degree
3  of case . . . ;" and (3) "*The Plaintiff does not have any financial*
4  *resources to secure the testimony of expert witnesses.*" (<u>Id.</u>
5  (emphasis added).) On September 14, 2009, the Magistrate Judge
6  denied plaintiff's motion. (Doc. No. 35.)

7       On September 21, 2009, plaintiff moved to compel discovery
8  from and impose sanctions against the U.C. Davis defendants. (Doc.
9  No. 36.) While that motion was pending, the U.C. Davis defendants
10 moved for summary judgment. (Doc. No. 41.) The U.C. Davis
11 defendants amended their motion on November 24, 2009. (Doc. No.
12 49.)

13      On December 15, 2009, plaintiff moved for a court appointed
14 medical expert witness under Fed. R. Evid. 706 ("Rule 706"). (Doc.
15 No. 53.)[2] Gorton indicated that he filed this motion in response
16 to the U.C. Davis defendants' argument that, "[U]nless plaintiff
17 can provide expert evidence that the treatment he received equated
18 with deliberate indifference thereby creating a material issue of
19 fact, summary judgment should be entered for defendants." (<u>Id.</u>)
20 Plaintiff explained that he is indigent and, thus, unable to afford
21 "the costs of retaining the services of a licensed medical expert,
22 trained in the field of nephrology." (<u>Id.</u>) While plaintiff
23 explicitly cited Rule 706, which only allows courts to appoint
24 impartial expert witnesses, the language of his request could be

25 _____

26      [2] This motion was filed again on December 18, 2009. (Doc.
   No. 61.)

interpreted as a request for appointment of an expert witness for

his benefit. (<u>Id.</u> ("In accordance with Rule 706, of the Federal

Rules of Evidence, Plaintiff hereby Motions the Court to provide

*him* with a medical expert . . . .") (emphasis added).)

On the same day, plaintiff filed his opposition to the U.C.

Davis defendants' motion for summary judgment. (Doc. No. 57.)

Gorton argued that,

> Within the Defendant's Memorandum of Points and
> Authorities . . . , they have established the
> requirement to provide opposing Expert evidence such
> that, "unless plaintiff can provide expert evidence . .
> . summary judgment should be entered for defendants." [
> ¶ ] If that is in fact the case of Law, then the Law has
> reverted back towards tyranny against the poor, so the
> rich can prevail.

(<u>Id.</u> at 1-2.) Plaintiff, noting his pending motion for appointment

of an expert witness, attempted to present several articles

concerning the diagnosis and treatment of his diseases as evidence

to counter the expert testimony from the U.C. Davis defendants.

(See <u>id.</u>) Specifically, he provided an entry from a medical

encyclopedia on nephrotic syndrome, which described the causes,

symptoms, exams and tests, and treatment of the disease. (Ex. A to

Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. ("Pl.'s Opp'n"), Doc. No.

57.) He likewise attached an entry from the same medical

encyclopedia on membranous nephropathy, which described the same

information for that disease. (<u>Id.</u>) Gorton provided additional

information on the causes and treatment of membranous nephropathy

from EdREN, a website of the Renal Unit of the Royal Infirmary of

Edinburgh. (<u>Id.</u>) This document also described factors that may

increase the chance of loss of kidney function. (<u>Id.</u>) While these documents do not describe the standard of care, they do indicate the seriousness of plaintiff's diagnoses and suggest the possibility that defendants may have had knowledge from his test results that he faced a serious risk of harm absent prompt diagnosis and treatment.

On December 18, 2009, the U.C. Davis defendants filed an opposition to plaintiff's motion for appointment of an expert witness. (Doc. No. 60.) They contended that plaintiff's request under Rule 706 was for an expert witness for his benefit as opposed to the benefit of the court or the trier of fact. (<u>Id.</u>) Alternatively, these defendants argued that, "The matters set forth in this case are not so complex in that it would require a court to have an expert to understand the issues at hand." (<u>Id.</u>)

On January 21, 2010, the Magistrate Judge denied plaintiff's request for appointment of an expert witness. (Doc. No. 69.)

On April 30, 2010, the state defendants moved for summary judgment. (Doc. No. 71.) On May 7, 2010, Gorton moved for a stay of the motion on the grounds that no scheduling order had been issued with respect to the state defendants. (Doc. No. 72.) Plaintiff indicated that he had not sought discovery from these defendants because no court order authorized him to do so. (<u>Id.</u>) On May 21, 2010, the Magistrate Judge issued an order vacating the state defendant's motion. The Magistrate Judge chastised plaintiff for not earlier propounding discovery upon the state defendants and for being unaware that he did not require permission from the court

1  to conduct discovery. (Doc. No. 74.) He, nonetheless, vacated the

2  summary judgment motion and permitted plaintiff and the state

3  defendants to conduct discovery until August 18, 2010. (<u>Id.</u>)

4       On August 11, 2010,[3] the Magistrate Judge issued findings and

5  recommendations that this court grant the U.C. Davis defendants'

6  motion for summary judgment on the grounds that plaintiff had

7  failed to present a triable question on his claims against these

8  defendants because he did not produce expert witness testimony.

9  (Doc. No. 75.) On June 24, 2010, Gorton filed objections to the

10 findings and recommendations raising the same issues concerning

11 expert testimony that he argued in opposition to the motion for

12 summary judgment. (Doc. No. 78.) On August 11, 2010, this court

13 held that, "Given the legal complexity and the broad significance

14 of [the apparent inability of an indigent prisoner to ever

15 successfully litigate cases such as the instant case without an

16 expert witness], the court has determined that this case may be

17 appropriate for the limited appointment of counsel as to the

18 question of whether the denial of plaintiff's request for an expert

19 witness offends his constitutional rights." (Doc. No. 83.) In a

20 footnote, the court further explained that, "The court will invite

21 the parties to consider whether experts should be appointed as a

22 matter of course when these cases are brought as well as under what

23 conditions, if any, must a district court grant such a request for

24 appointment in accordance with the Constitution. Further, the court

25 _____

26      [3] The findings and recommendations were signed on June 7, 2010, but were filed on August 11, 2010.

1    will request briefing as to the anticipated scope of medical

2    testimony necessary, if any, and the administrative and financial

3    burdens appointment of expert witnesses in cases like these may

4    pose."[4] (Id.) On September 29, 2010, this court denied the U.C.

5    Davis defendants' motion for summary judgment without prejudice as

6    it continued to seek volunteer limited counsel for plaintiff. (Doc.

7    No. 97.) On November 3, 2010, the court appointed Nicholas Short

8    and Dean Morehous as counsel for plaintiff to litigate the question

9    of whether Gorton is entitled to a medical expert. (Doc. No. 105.)

10                            **II. STANDARDS**

11       **A.   Motion for Reconsideration**

12       Under 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and

13   L.R. 303(f), parties may seek reconsideration of a magistrate

14   judge's non-dispositive order before a district judge. District

15   courts must "modify or set aside any part of the order that is

16   clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

17       **B.   Deliberate Indifference to Serious Medical Need**

18       In Estelle v. Gamble, the Supreme Court held that an inmate

19   making a Eighth Amendment claim based on prison medical treatment

20   must show "deliberate indifference to serious medical needs."

21   429 U.S. 97, 104 (1976). In the Ninth Circuit, courts determine

22   whether such a showing has been met based on a two part test. The

23   plaintiff must first "show a serious medical need by demonstrating

24

25       [4] All defendants contend that the subject matter discussed in
     this footnote is outside the scope of the motion. Thus, only
26   plaintiff has provided any argument or discussion on these
     questions.

1   that failure to treat a prisoner's condition could result in
2   further significant injury or the unnecessary and wanton infliction
3   of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)
4   (internal quotations omitted). Such injuries include (1) those that
5   "a reasonable doctor or patient would find important and worthy of
6   comment or treatment; (2) the presence of a medical condition that
7   significantly affects an individual's daily activities; [and]
8   (3) the existence of chronic and substantial pain." McGuckin v.
9   Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1991).

10      After making a showing of a serious medical need, the
11  plaintiff must show that "the defendant's response to the need
12  was deliberately indifferent." Jett, 439 F.3d at 1096. This
13  requirement is "less stringent in cases involving a prisoner's
14  medical needs than in other cases involving harm to incarcerated
15  individuals because '[the] State's responsibility to provide
16  inmates with medical care ordinarily does not conflict with
17  competing administrative concerns.'" McGuckin, 974 F.2d at 1060
18  (quoting Hudson v. McMillian, 503 U.S. 1, 6 (1992)).

19      Accordingly, the Ninth Circuit has instructed courts to
20  consider two separate elements when determining whether defendants
21  were deliberately indifferent. First, the plaintiff must show "a
22  purposeful act or failure to respond to a prisoner's pain or
23  possible medical need." Jett, 439 F.3d at 1096. This element "may
24  be shown by the way in which prison physicians provide medical
25  care." Id. Plaintiff, however, must be able to show that defendants
26  were subjectively aware of the risk of serious harm. Toguchi v.

Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). Subjective awareness "may be shown by circumstantial evidence where the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003). Second, the plaintiff must show that he was harmed by the indifference. Jett, 439 F.3d at 1096.

### III. ANALYSIS

The question before the court is under what conditions should it appoint an impartial witness under Fed. R. Evid. 706 ("Rule 706") where a plaintiff alleges deliberate indifference to a serious medical need in violation of the Eighth Amendment and whether those conditions apply to Gorton's claims.[5] While courts infrequently appoint expert witnesses under Rule 706, see 29 Charles Alan Wright et al., Federal Practice and Procedure § 6304 (3d ed. Supp. 2011), the court here finds that an impartial expert witness should have been appointed to provide the trier of fact with an unbiased review of plaintiff's medical care and that costs for such a witness should have been paid by defendants. At oral argument on this motion, plaintiff's counsel indicated that they intend to continue their representation of Gorton. Counsel for plaintiff, thus, may request reimbursement for expert witness fees from the non-appropriated fund. Nonetheless, given the frequency with which this court is presented with cases similar to the case

---

[5] The court does not address the question of whether the Constitution requires appointment because, under the doctrine of Constitutional avoidance, it can resolves the question of whether appointment is appropriate under Rule 706.

at bar, the court will discuss several matters that should be considered under Rule 706.

### A. Rule 706

#### 1. Appointment

Under Rule 706, a district court may "on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed." Fed. R. Evid. 706(a). The Rule only allows a court to appoint a neutral expert.[6] <u>See</u> <u>In re High Fructose Corn Syrup Antitrust Litigation</u>, 295 F.3d 651, 665 (7th Cir. 2002). Courts of appeal review district court decisions under Rule 706 for abuse of discretion. <u>Walker v. Am. Home Shield Long Term Disability Plan</u>, 180 F.3d 1065, 1071 (9th Cir. 1999) (finding that district court did not abuse its discretion in appointing an independent medical expert to help evaluate evidence).

#### 2. Compensation

Rule 706 also specifies the means by which such experts must be compensated. Fed. R. Evid. 706(b). Expert witnesses are entitled to reasonable compensation, which, in civil cases not involving just compensation under the Fifth Amendment, "shall be paid by the parties in such proportion and at such time as the court directs, and thereafter charged in like manner as other costs." <u>Id.</u> The

---

[6] Defendants argued that plaintiff was seeking appointment of an expert witness for his own benefit, which all parties agree is not permitted under Rule 706 or 28 U.S.C. § 1915, the in forma pauperis statute. Plaintiff, however, made clear that he was seeking appointment of a neutral expert in his reply. While his initial request to the Magistrate Judge may have been ambiguous, the court nonetheless will proceed to solely consider whether an impartial expert witness should have been appointed.

1  Ninth Circuit has interpreted the phrase, "such proportion as the

2  court directs" to permit a "district court to apportion all the

3  cost to one side" in an appropriate case. McKinney v. Anderson,

4  924 F.2d 1500, 1511 (9th Cir. 1991), affirmed on other grounds

5  Helling v. McKinney, 509 U.S. 25 (1993). The Circuit reasoned that

6  such an interpretation is necessary because, "Otherwise, we are

7  faced with an inflexible rule that would prevent the district court

8  from appointing an expert witness whenever one of the parties in

9  an action is indigent, even when the expert would significantly

10 help the court." Id.

11      **B.   Standards Guiding Application of Rule 706**

12      The decision of whether to appoint an expert witness under

13 Rule 706 is discretionary. Consequently, the courts of appeals have

14 rarely identified circumstances under which a district court must

15 appoint a neutral expert. Rather, the cases interpreting Rule 706

16 typically explain why the district court did not abuse its

17 discretion when applying the rule. For this reason, the court now

18 considers the guideposts set forth by the appellate courts to

19 determine the factors district courts should consider when

20 determining if appointment of an expert witness is proper.

21      **1.   Reasoned Explanation**

22      Several courts of appeal have determined that Rule 706

23 requires the district court, upon motion of a party, to "exercise

24 its discretion and expressly articulate a reasoned explanation for

25 its determination." Gaviria v. Reynolds, 476 F.3d 940, 945 (D.C.

26 Cir. 2007) (citing Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.,

326 F.3d 1333, 1348-49 (11th Cir. 2003) ("Where a party requests the appointment of an expert to aid in evaluating evidence that is relevant to a central issue in the case, the court is obligated to fairly consider the request and to provide a reasoned explanation for its ultimate decision on the matter."); Steele v. Shah, 87 F.3d 1266, 1270-71 (11th Cir. 1996) (remanding motion to appoint counsel to district court where "district court gave no explanation for the refusal to appoint . . . ."); see also Hannah v. United States, 523 F.3d 597, 601 (5th Cir. 2008) (finding that district court did not abuse its discretion in denying motion for appointment of expert witness where, inter alia, it "considered the request and provided a reasoned denial."). The Eleventh Circuit remanded a motion for appointment of an expert witness where no explanation was given because absent an explanation it was, "unable to review the[] denial[] for abuse of discretion." Steele, 87 F.3d at 1270. No appellate court that has considered the issue has determined that a unreasoned denial would be sufficient under the rule. While the Ninth Circuit has not offered an opinion on this question, the court nonetheless finds that it should follow the weight of authority that requires a reasoned explanation for any decision under Rule 706.

Here, the Magistrate Judge merely stated that, "On December 15, 2009, and December 18, 2009, plaintiff filed motions for the appointment of a court appointed medical expert. At this time, appointment of a medical expert is not warranted. Fed. R. Evid. 706. Accordingly, plaintiff's motions are denied." (Doc. No.

14

1  69.) This order failed to provide any reason for the denial aside

2  from a conclusory statement that appointment is not warranted. For

3  this reason, the court finds that the Magistrate Judge's ruling on

4  plaintiff's request for appointment of counsel was clearly

5  erroneous.

6      Defendants refer the court to <u>Tuvulu v. Woodford</u>, No. CIV.

7  S-04-1724 DFL KJM P, 2006 U.S. Dist. LEXIS 80642, at *12-13 (E.D.

8  Cal. Nov. 3, 2006) in support of their argument that the Magistrate

9  Judge's denial of the request was sufficient. There, plaintiff, a

10 prisoner proceeding pro se, sought appointment of a family

11 psychologist as an expert witness to testify about the harm caused

12 by denial of private visits between parents and children. <u>Id.</u> The

13 Magistrate Judge declined to exercise her discretion to appoint a

14 neutral expert witness because "it does not take any specialized

15 knowledge to evaluate the stress on plaintiff's parental

16 relationship caused by his incarceration and the resulting lack of

17 privacy." <u>Id.</u> at *13. Thus, the Magistrate Judge provided a

18 reasoned explanation for her decision to decline to appoint a

19 neutral expert. In sum, her order followed the unanimous weight of

20 authority demanding reasoned decisions and does not support a

21 contention that the decision in the instant case was sufficient.[7]

22 ///

23 ///

24

---

25     [7] The court notes that the explanation need not be extensive.
   At a minimum, however, it must explain why the court declined to
26 exercise its discretion under the facts and posture of the specific
   case.

## 2. Accurate Factfinding

Ultimately, the most important question a court must consider when deciding whether to appoint a neutral expert witness is whether doing so will promote accurate factfinding. 29 Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 6304 (3d ed. Supp. 2011) ("The policy goal of Rule 706 is to promote accurate factfinding."). Accordingly, most courts considering appointment of a neutral expert have focused their attention on this factor. Upon review of these decisions, several themes become apparent.

In <u>McKinney</u>, a pro se inmate alleged that prison officials were deliberately indifferent to his serious medical needs by exposing him to environmental tobacco smoke ("ETS"). 924 F.2d at 1502. On appeal from a directed verdict, the Ninth Circuit described scientific reports on the effects of cigarette smoke. <u>Id.</u> at 1505-07. Following this analysis, the court first held that the district court has the discretion to appoint expert witnesses in this case under Rule 706 even though plaintiff cannot contribute to the costs of such witnesses. <u>Id.</u> at 1511. Moreover, the Circuit advised the district court that,

> Considering the complexity of the scientific evidence in the present case, we recommend that, on remand, the district court consider appointing an expert witness or witnesses who can provide the court with scientific information on the health effects of ETS and on the concentration levels of ETS in the Carson City prison.

<u>Id.</u>

In <u>Smith v. Jenkins</u>, 919 F.2d 90 (8th Cir. 1990), plaintiff brought a claim of deliberate indifference to a serious medical

1   need on the grounds that a psychiatrist defendant denied him

2   necessary medical treatment for his mental illness. Id. at 91-92.

3   The plaintiff moved for appointment of an independent psychiatrist

4   to evaluate his condition and medical needs under Rule 706, but

5   that request was denied by the district court.   Id. at 92. The

6   Eighth Circuit reversed the district court's grant of summary

7   judgment for the defendant on the grounds that plaintiff's medical

8   records were absent from the court record and that the record

9   contained "virtually no evidence of the appropriate standard of

10  care nor any indication whether [defendant]'s actions amounted to

11  deliberate indifference as measured by that standard." Id. at 93.

12  On remand, the Circuit instructed the district court "to review

13  [plaintiff]'s medical records. If a dispute still exists between

14  the diagnosis and treatment before and after incarceration, an

15  independent psychiatrist may be appointed to review all of

16  [plaintiff]'s medical records and provide an opinion as to the

17  proper diagnosis of [plaintiff] and the appropriate standard of

18  care for psychiatrists . . . ." Id. at 94. The court further

19  remarked that,

20          We note that under the Celotex standard, one might argue
            that summary judgment may be granted without this proof
21          in light of the fact that Smith bears the burden of
            proof on this issue at trial. See Celotex Corp. v.
22          Catrett, 477 U.S. 317, 324 (1986). However, we believe
            it would be incongruous to deny the nonmoving party the
23          ability to present the necessary proof to withstand a
            motion for summary judgment-as the district court did
24          here by denying the Rule 706 motion-and then grant
            summary judgment against the nonmoving party simply
25          because the nonmoving party has failed to come forward
            with such proof.

26

                                  17

1  <u>Id.</u> at 93 n.4.

2      The Seventh Circuit also considered whether it was appropriate
3  to appoint a neutral expert witness in a claim alleging deliberate
4  indifference to a serious medical need. <u>Ledford v. Sullivan</u>,
5  105 F.3d 354, 359-60 (7th Cir. 1997). Plaintiff in <u>Ledford</u> alleged
6  that his Eighth Amendment rights were violated when prison
7  officials confiscated his psychotropic drugs upon transfer to a new
8  facility. <u>Id.</u> at 355-56. The Circuit concluded that the district
9  court did not abuse its discretion when it declined to appoint an
10  expert witness because, "The jury was capable of evaluating the
11  defendants' subjective belief in light of the court's deliberate
12  indifference definition without the aid of an expert." <u>Id.</u> at 359.
13  The court further concluded that the jury "could likewise
14  comprehend whether [plaintiff] had serious medical needs without
15  the aid of an expert." <u>Id.</u> at 359. The court reached this
16  conclusion because, under the facts of the case, the jury need not
17  consider "probing, complex questions concerning medical diagnosis
18  and judgment," as they would in a medical malpractice action. <u>Id.</u>
19  Rather, it held the jury was tasked with a subjective inquiry into
20  the state of mind of the defendants. <u>Id.</u> The Circuit also concluded
21  that an expert was not necessary to determine whether plaintiff had
22  serious medical needs because "[t]he symptoms which [plaintiff]
23  exhibited were not beyond a lay person's grasp." <u>Id.</u> at 359-60.

24      The Eleventh Circuit considered a similar case, yet decided,
25  under the facts of that case, that the district court should
26  consider whether appointment of an expert was appropriate.

18

1  Steele v. Shah, 87 F.3d 1266 (11th Cir. 1996). The plaintiff in
2  Steele was diagnosed with "Adjustment Disorder with Anxious Mood"
3  and was prescribed several psychotropic drugs. Id. at 1267. He was
4  transferred to a new facility where a physician discontinued his
5  medication, allegedly after one cursory exam and after receiving
6  notification from the physicians at the first facility concerning
7  plaintiff's diagnosis and need for aggressive treatment. Id. at
8  1267-68. The district court denied plaintiff's request for
9  appointment of an expert witness without any explanation. Id. at
10 1270-71. The Circuit remanded the issue of appointment of an expert
11 witness to the district court and suggested that expert opinion on
12 the standard of psychiatric care and its application "obviously
13 might be important to the finder of fact."[8] Id. at 1271.

14      More recently, the Eleventh Circuit found that the district
15 court did not abuse its discretion when denying a request for
16 appointment of an expert witness in a case alleging deliberate
17 indifference to a serious medical need because the defendant moved
18 for summary judgment on the grounds that she did not have the power
19 to overrule a decision of a superior and not on the grounds the
20 plaintiff did not suffer from a serious medical need or that she
21 was deliberately indifferent to that need. German v. Broward County
22 Sheriff's Office, 315 Fed. Appx. 773, 778 (11th Cir. 2009)
23 (unpub.).

24

25      [8] Also, as discussed in the following section, the court
26 considered plaintiff's indigency to be a factor weighing in favor
   of appointment of an expert witness.

1   In Gavira v. Reynolds, 476 F.3d 940, 941 (D.C. Cir. 2007), the

2   plaintiff brought a medical malpractice claim against oral surgeons

3   who attempted to repair his jaw after it was broken during arrest.

4   Appointed trial counsel in Gavira consulted an expert who found no

5   likely fault in the surgeries. Id. at 945. Further, recent medical

6   tests indicated that plaintiff showed no continuing problems. Id.

7   Based on this evidence, the D.C. Circuit concluded that the

8   district court did not abuse its discretion when declining to

9   appoint an expert witness explaining that, "While it is true that

10  [plaintiff] cannot prevail under District of Columbia law without

11  an expert witness, it is fair to say that [plaintiff]'s claims fail

12  not because of the district court's refusal to appoint an expert

13  witness but because of his broader failure to adduce any evidence

14  that the claims have merit." Id. at 946 (citation omitted).

15  This case law provides some guidance as to the circumstances

16  under which a court should consider appointing an impartial expert

17  witness to promote accurate fact finding. The touchstone is that

18  expert witnesses should not be appointed under Rule 706 where not

19  necessary or significantly useful for the trier of fact to

20  comprehend a material issue in a case.[9] Further, in order to

21  _____

22  [9] At oral argument, counsel for the U.C. Davis defendants
    remarked that the case would likely proceed to trial if the court

23  were to appoint an expert or approve a request for payment of
    expert fees. While counsel was attempting to dissuade the court

24  from allowing such testimony, it appears to this court that counsel
    missed the point of Rule 706. The Rule is drafted to avoid such a

25  situation where the only reason why a case would not proceed to
    trial is the presence or absence of an expert witness rather than

26  the merits of a plaintiff's claims. In effect, counsel's argument
    provides significant support to the need for expert testimony in

demonstrate such necessity, there also must be some evidence,

admissible or otherwise, that demonstrates a serious dispute that

could be resolved or understood through expert testimony.[10]

### 3.    Ability of Party to Procure Expert Testimony

It is clear that expert witnesses should only be appointed

where doing so is necessary to ensure accurate factfinding. Such

is the threshold issue. Nonetheless, courts consider other factors

when deciding if appointment is appropriate. The first, and most

obvious, is whether testimony from the parties' experts is

sufficient to reveal the facts. Federal Practice and Procedure

§ 6304 (3d ed. Supp. 2011). Expert witnesses are rarely appointed

this case.

[10] Defendants rely on Hannah v. United States, 523 F.3d 397 (5th Cir. 2008), for the proposition that the court may not appoint an expert under Rule 706 just because plaintiff will lose without expert testimony. In Hannah, a federal prisoner brought a medical malpractice claim under the Federal Tort Claims Act for alleged negligence arising out of treatment he received while suffering from a sinus infection. Id. at 599. The Circuit concluded that the district court did not abuse its discretion when denying plaintiff's request for an expert witness and then granting summary judgment to defendants because plaintiff failed to present expert testimony on the standard of care. Id. at 601. The Circuit explained that the district court provided a reasoned denial of the request and that plaintiff's request failed to comply with its scheduling orders. Id. at 601. The court makes no reference to the evidence, if any, that plaintiff was able to produce in support of his claim. Ultimately, this decision does not provide sufficient detail or explanation for its finding that the district court did not abuse its discretion. It could very well be that the plaintiff was, like the plaintiff in Gavira, unable to produce any evidence that demonstrated that an expert witness would actually reveal something about the case. To the extent Hannah is in conflict with the weight of appellate authority suggesting that courts should consider appointing expert witnesses when, through the course of litigation, it becomes apparent that unbiased expert testimony will aid the trier of fact in making an accurate factual determination, however, this court declines to follow its reasoning.

under Rule 706 because the adversary system is usually sufficient to promote accurate factfinding. See id.

Where a plaintiff is an indigent prisoner proceeding pro se, however, the adversary system is more likely to fail in its pursuit of accurate factfinding. Several courts have considered these issues. As discussed above, in Steele, the Eleventh Circuit strongly suggested that the district court consider appointing an expert witness on remand not only because the psychiatric standard of care was at issue, but also because, "If, as he claims, [plaintiff] is indigent, this could provide further reason to appoint an expert to avoid a wholly one-sided presentation of opinions on the issue." 87 F.3d at 1271. Further, in Smith, the Eighth Circuit expressed some hesitance in denying the nonmoving pro se prisoner the ability to present necessary proof and then granting summary judgment for failure to present such proof. 919 F.2d at 93 n.4.

The D.C. District Court further expounded on this general concept in Applegate v. Dobrovir, Oakes & Gebhardt. 628 F. Supp. 378 (D.D.C. 1984). While the court ultimately determined that appointment of an expert witness was not warranted in that case, the court's decision turned on findings that plaintiff was not indigent, did not claim that he failed to obtain an expert because he could not afford one, and did not demonstrate that his failure to obtain an expert was due to factors outside the merits of his case. Id. at 383. The court noted that, "It may well be that . . . . plaintiffs suing doctors have difficulty persuading other doctors

1  to testify against a colleague for fear of reprisal . . . ," but

2  such factors were not present in that case. It is important to note

3  that the plaintiff in <u>Applegate</u> was not a prisoner, but rather a

4  former client suing his lawyer. Thus, the court's observation about

5  fear of reprisal in the medical profession did not address the

6  impact of such a fear where the plaintiff was a convicted criminal.

7  One can only postulate how such a fear of reprisal would be

8  enhanced for a medical expert to testify against a colleague who

9  treated a patient belonging to a most unpopular class.

10      The U.C. Davis defendants repeatedly assert that if plaintiff

11 had a strong case, he would be able to obtain expert testimony on

12 a contingency fee basis. These defendants appear to be overlooking

13 several significant factors. First, successful Eighth Amendment

14 claims rarely generate large damage awards, as do some medical

15 malpractice claims brought by individuals who are not convicted

16 criminals. Second, the Prison Litigation Reform Act significantly

17 reduced the amount of attorneys' fees recoverable by any actions

18 brought by prisoners. 42 U.S.C. § 1997e(d). Of note are

19 requirements that, (1) the amount of the fee is proportionately

20 related to the court ordered relief for the violation; (2) the

21 award of attorneys fees may be no greater that 150 percent of the

22 judgment; (3) the plaintiff must pay a portion of the judgment not

23 to exceed 25 percent as attorneys fees; and (4) hourly rates for

24 attorneys are limited to 150 percent of the hourly rate established

25 for court-appointed counsel. <u>Id.</u> In light of these barriers, it

26 appears quite likely that even a prisoner with the strongest claims

1   may nonetheless be unable to acquire counsel on a contingency
2   basis, who would then be able to hire an expert witness on his
3   behalf.

4       Further, incarceration places additional barriers upon a
5   plaintiff litigating deliberate indifference to a serious medical
6   need. For example, in Smith, the Eighth Circuit suggested that the
7   district court consider appointing an expert witness to opine on
8   the standard of care and its application to the case or "obtain an
9   additional opinion from . . . [plaintiff]'s previous physician .
10  . . concerning the nature of his prior treatment and the necessity
11  of continuing an medication." 919 F.2d at 94. Ordinarily, an
12  individual who is not incarcerated can obtain such information from
13  prior medical providers or even seek a second opinion, which, in
14  some cases, can be sufficient to present a triable question and to
15  promote accurate factfinding.

16      Recently, this court considered such a case. In Nelson v.
17  Runnells, a prisoner brought a claim for deliberate indifference
18  to a serious medical need where the plaintiff alleged that he
19  received no care after a physical assault, which occurred in August
20  2005. No. 2:06-cv-1289 LKK KJN P, 2010 WL 3238925, at *13 (E.D.
21  Cal. Aug. 12, 2010) findings & recommendations adopted by 2010 WL
22  3745129 (E.D. Cal. Sept. 16, 2010). Specifically, he alleged that
23  the defendant medical providers were deliberately indifferent to
24  his serious medical need because of their failure to refer him for
25  x-rays to treat his broken nose, possibly cracked cheekbone, and
26  blurred vision. Id. On February 23, 2010, the plaintiff was able

to obtain an x-ray of his nose because he had earlier been released from prison. Id. This report indicated that he suffered from a deformity of the nasal bone, which "*may be from an old fracture*." Id. As a result of this report, the Magistrate Judge recommended, and this court adopted, the following analysis:

> There is no evidence that plaintiff suffered a serious injury to his nose prior to the 2005 assault. Thus, the 2010 x-ray demonstrates that the injury plaintiff sustained in the assault was "serious." Plaintiff alleges that the injury caused him substantial pain, which is supported by his prescriptions for tylenol and ibuprofen, and the x-ray demonstrates permanent disfigurement. Significantly, defendants have not submitted any evidence or statement to refute plaintiff's supported allegations that his nose was broken in the assault and that defendants did not respond appropriately. Plaintiff's 2010 x-ray thus raises a material issue of fact whether defendants were deliberately indifferent in failing to x-ray plaintiff's nose and treat the injury differently. . . . For these reasons, the court recommends denying defendants' motion for summary judgment on the substance of plaintiff's Eighth Amendment claim alleging deliberate indifference to his serious medical needs.

Id. at *16.

While a party's ability to obtain independent opinion is not determinative in and of itself under Rule 706, it nonetheless is a factor that courts should consider when determining if appointment of a neutral expert is appropriate. Courts should, thus, also consider whether a party's capacity to acquire expert testimony is limited due to factors outside of his control, including whether he is indigent or incarcerated. Specifically, courts should look to whether these factors prevent a party from presenting a potentially meritorious case.

///

### 4.   Due Process Concerns

Another factor that appears to this court to be relevant to a determination of whether appointment of an expert witness is appropriate is the nature of the claim brought by a plaintiff. The Supreme Court has recognized that due process requires the state to provide prisoners with "[t]he tools . . . that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996). These required tools are in contrast to the "[i]mpairment of an *other* litigating capacity [such as, the ability to bring shareholder derivative actions and slip-and-fall claims as] simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." <u>Id.</u> (emphasis in original). Appeals of criminal convictions and civil rights actions are entitled to this privileged position because fundamental, Constitutional rights are at stake. While clearly not a necessary and sufficient factor under Rule 706, it appears to this court that district courts should also consider the significance of the rights at stake when deciding if appointment of an expert is proper.[11]

---

[11] As discussed in footnote 6, the parties agree that the in forma pauperis statute, 28 U.S.C. § 1915, does not authorize the court to appoint an expert for plaintiff's benefit to be paid by the court. <u>See</u> <u>Hannah</u>, 523 F. 3d at 601 (District courts do not have the power to appoint expert witnesses under Section 1915.); <u>Boring v. Kozakiewicz</u>, 833 F.2d 468, 474 (3d Cir. 1987), <u>cert. denied</u>, 485 U.S. 991 (1988) (same). The reasoning behind these decisions is that Section 1915 only authorizes the court to direct payment for three specific expenses, which do not include expert witness costs. 28 U.S.C. § 1915(c). As mentioned in footnote 5, the

1          **5.   Summary**

2          Foremost, it appears to this court to be required that any

3    denial of an explicit request for appointment of an expert witness

4    under Rule 706 requires a reasoned explanation for such a denial.

5    The explanation need not be extensive. While it may be appropriate

6    to deny a request made at a point in litigation where evidence is

7    not being evaluated as not being necessary at the time,[12] when the

8    court or the trier of fact is evaluating evidence,[13] courts cannot

9    rely on such a minimal explanation. Rather, in those circumstances

10   where the timing is appropriate, the court should discuss the

11   merits of the request.

12         The court now turns to the substantive factors that courts

13   should consider when determining whether to appoint an expert

14   witness under Rule 706. Neither the evidentiary rule nor the cases

15   ───────────────

16   court does not reach the question of whether the Constitution
     requires the appointment of expert witnesses in cases similar to
17   the case at bar because it decides this case under the policies
     guiding Rule 706. Further, plaintiff does not argue that a neutral
18   expert under Rule 706 would be inadequate to protect his
     Constitutional rights. The court similarly cannot envision any
19   arguments in support of that proposition. Under these
     circumstances, the court does not determine whether any authority,
20   including that derived from plaintiff's Constitutional rights,
     exists for it to appoint an expert for an indigent party's benefit.

21

22         [12] <u>See</u> <u>Estrada v. Rowe</u>, No. C 08-2801 MMC (PR), 2011 WL
     249453, at *5 (N.D. Cal. Jan. 25, 2011) (finding that "until the
23   Court has had the opportunity to review the arguments and evidence
     submitted by the parties on summary judgment, no determination can
24   be made that the issues are so complex as to require the testimony
     of an expert to assist the trier of fact").

25         [13] The most common examples of such periods of litigation
     arise are during motions for preliminary injunctions, motions for
26   summary judgment, and trial.

interpreting it set forth a standard for application of the rule. Instead, this court notes several concerns regularly discussed by the Courts of Appeal on the application of Rule 706:

> (1)   Whether expert testimony is necessary or significantly useful for the trier of fact to comprehend a material issue in a case.

> (2)   Whether the moving party has produced some evidence, admissible or otherwise, that demonstrates a serious dispute that could be resolved or understood through expert testimony.

> (3)   Whether certain circumstances or conditions of a party limit the effectiveness of the adversary process to result in accurate factfinding.

> (4)   Whether the legal basis of plaintiff's claim entitles him to special consideration by the courts.

It is this court's opinion that these factors should be considered by courts in exercising their discretion under Rule 706.

Moreover, it also appears that courts should consider *sua sponte* whether an expert witness would promote accurate factfinding at any stage of litigation where evidence is evaluated.[14] See Fed. R. Evid. 706(a) ("The court may on its own motion . . . enter an order to show cause why expert witnesses

---

[14] The court declines to adopt plaintiff's proposal to conduct such an evaluation at case management. This factually intensive test is most appropriately applied when the court is determining the sufficiency of evidence and not based upon the mere allegations of a complaint.

should not be appointed . . . ."). While the court assumes such *sua sponte* motions will be rare, they should not be nonexistent. Making such evaluations does appear to comport with the purpose of Rule 706 in allowing motions to be brought by the court and its overall goal to promote accurate factfinding.

### C.  Burden to Defendants

A common theme throughout defendants' briefs is that applying Rule 706 to claims like Gorton's would be unduly burdensome to the state and to private defendants performing state functions. While the court cannot speak to every potential application of Rule 706, it does refer defendants to the appendix in which the court has attached a four-page declaration that was sufficient for a plaintiff bringing a similar claim to survive summary judgment. See Watson v. Torruella, No. CIV S-06-1475 LKK EFB P, 2009 WL 32246805 (E.D. Cal. Oct. 7, 2009). Regardless, however, any concerns that defendants have with the costs of Rule 706 are problems with the rule, which this court is in no position to ignore.

### D.  Application to Instant Case

Plaintiff has presented evidence of what appear to be significant delays in the treatment of his kidney disorders. See August 11, 2011 Findings and Recommendations (Doc. No. 75). Plaintiff has diligently attempted to obtain and present evidence of the appropriate standard of care and the application of that standard to this case. (See Ex. A to Pl.'s Opp'n.) This includes presentation of articles on the diagnosis and treatment of his illnesses.

1    Moreover, the court is informed by its experience presiding

2    over Coleman v. Brown, 2:90-cv-520-LKK-JFM (E.D. Cal), and the

3    Three Judge Court convened in Coleman and Plata v. Brown, C01-1351

4    (N.D. Cal). The order of the Three Judge Court was recently

5    affirmed by the Supreme Court. Brown v. Plata, ___ U.S. ____,

6    131 S.Ct. 1910 (2011). The Supreme Court cited with approval

7    findings of the Three Judge Court concerning California's prison

8    health care during the very time that Gorton allegedly suffered

9    delays in medical treatment. Specifically, the Court concluded

10   that, "The number of staff is inadequate, and prisoners face

11   significant delays in access to care." Id. at 1925. It continued

12   to provide several examples of such delays.

> A prisoner with severe abdominal pain died after a
> 5-week delay in referral to a specialist; a prisoner
> with "constant and extreme" chest pain died after an
> 8-hour delay in evaluation by a doctor; and a prisoner
> died of testicular cancer after a "failure of MDs to
> work up for cancer in a young man with 17 months of
> testicular pain."

17   Id. quoting California Prison Health Care Receivership Corp.,

18   K. Imai, Analysis of CDCR Death Reviews 2006, pp. 6-7 (Aug. 2007).

19   The Court continued to cite with approval testimony of "Doctor

20   Ronald Shansky, former medical director of the Illinois state

21   prison system, [who] surveyed death reviews for California

22   prisoners. He concluded that extreme departures from the standard

23   of care were 'widespread,' . . . and that the proportion of

24   'possibly preventable or preventable' deaths was 'extremely high.'"

25   Id. (citations to record omitted). It further referenced statistics

26   from 2006 and 2007 that "a preventable or possibly preventable

1  death occurred once every five to six days." Id. at 1926 n.4.

2  Finally, the Court affirmed that, "Many more prisoners, suffering

3  from severe but not life-threatening conditions, experience

4  prolonged illness and unnecessary pain." Id. at 1925-26. All the

5  above demonstrates that the claims of delayed or absent treatment

6  may well be justified and, in appropriate cases, may warrant

7  independent review. While none of the above demonstrates that a

8  case was below the level of adequate care, they, alone, suggest the

9  possibility. Taken with the evidence produced by plaintiff, they

10  demonstrate the need for an expert.

11      Thus, absent expert testimony, the court, as evaluator of fact

12  at summary judgment, cannot determine whether there is evidence

13  that defendant's treatment of plaintiff fell so far below the

14  standard of care that a jury could find that defendants were

15  subjectively aware of risk of harm to plaintiff. Accordingly, if

16  plaintiff were to proceed in pro per, the court would issue an

17  order to show cause on why an impartial expert witness should not

18  be appointed in this case under Rule 706.

19      At oral argument, however, counsel for plaintiff represented

20  that they intend to continue representing Gorton beyond their

21  limited appointment. Pursuant to General Order No. 230, appointed

22  counsel in section 1983 cases may move for reimbursement of expert

23  witness costs. Plaintiff's counsel further represented that they

24  would prefer to seek expert testimony under General Order No. 230

25  than under Rule 706. Thus, the court orders plaintiff to request

26  ///

reimbursement of expert fees under General Order No. 230 within sixty (60) days.

**IV. CONCLUSION**

For the foregoing reasons, the court ORDERS as follows:

(1) The court finds that the Magistrate Judge's order denying plaintiff's request for appointment of an expert witness under Rule 706 (Doc. No. 69) was clearly erroneous.

(2) Plaintiff shall submit an *ex parte* request to incur costs and request for payment of expert witness fees pursuant to General Order No. 230 within sixty (60) days of the issuance of this order. Plaintiff may file the request under seal.

(3) The court no longer refers this case to the Magistrate Judge. All future non-discovery motions shall be filed before this court.

(4) The court vacates all previously scheduled dates and sets a scheduling conference in the above captioned case for September 19, 2011. The parties shall file status reports fourteen (14) days prior to the conference.

IT IS SO ORDERED.

DATED: June 29, 2011.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

32

**APPENDIX**

Declaration of James E. Daly, D.O., M.S., Retired in Support of
Opposition to Motion for Summary Judgment

<u>Watson v. Torruella</u>, 2:06-cv-1475 LKK EFB (E.D. Cal.)

**DECLARATION OF JAMES E. DALY, D.O., M.S., RETIRED
IN SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NUMBER CV-S-06-1475 LKK EFB P**

I, James E. Daly, do hereby declare that the following statements, 1 through 20 inclusively, are true and correct based upon my personal medical training and experience; my personal review of Mr. Watson's medical records, as attahed to defendants' Motion and my personal consultation with Mr. Watson, and that:

1.   I am over eighteen years of age and NOT a party to the above entitled action.

2.   I am a retired licensed medical doctor with 35 years experience in Internal Medicine.  I am Board Certified in Internal Medicine and I have a Masters of Science Degree in Microbiology.

3.   During 17 months, January 14, 2002 through May 28, 2003, on no occasion did Dr. Torruella provide the minimum of standard community medical care to Mr. Watson.  Dr. Torruella failed to perform, consider record or rule out any differential diagnosis, which would have included actinic keratosis, cellulitus(skin infection), oncomyosis (fungal infection) foreign body or early Bowen's disease (Squamous Cell Cancer).

4.   From January 14, 2002 through May 28, 2003, Dr. Torruella did not collect any cultures or obtain a biopsy speciman from Mr. Watson's right thumb to confirm or rule out his diagnosis of bacterial infection, despite the persistence and worsening condition presented by Mr. Watson's right thumb.

5.   On May 28, 2003 when Mr. Watson presented an inflamed and painful right thumb, which had not responded to any prior treatment, Dr. Torruella prescribed 7 days of pain medication (Motrin) to treat

-1-

1  symtoms and grossly ignored standard diagnostic procedure available
2  to all General Practise Medical Offices to find the causation of Mr.
3  Watson's worsening medical malady.

4      6.    On NO occasion did Dr. Torruella provide medical treatment
5  to Mr. Watson that was consistent with the standards of community
6  medical care or in compliance with CDC quality care standards.

7      7.    It is disrespectful to the patient and undignified to the
8  reputation of the United States medical profession to deny, delay or
9  ignore the ongoing pain and suffering of the afflicted.

10      8.    From January 14, 2002 through May 28, 2003, Dr. Torruella
11  knowingly failed to provide proper medical care and standard diagnostic
12  procedures to determine why Mr. Watson's right thumb lesion continued
13  to deteriorate.  This extended absence of proper care of Squamous Cell
14  Cancer is gross medical negligence of a cancer that can, and did,
15  extend locally into adjacent tissue.  Mr. Watson was, and still is, at
16  risk of Squamous Cell Cancer that may have matastisized to other organs
17  where it can lay dormant, only to reappear in subsequent years.

18      9.    Mr. watson reports that in or about November 2003 at Mule
19  Creek State Prison, he was seen by Dr. Milliman regarding back pain.
20  At that time, he presented his inflamed, tender and painful thumb to
21  Dr. Milliman, who, without performing any differential diagnostic
22  testing, told him that the lesion on his right thumb was a "wart" and
23  that Mr. watson needed to learn to live with it.

24      10.    For approximately 5 months between December 2003 and May 2004,
25  Mr. Watson reports that he attempted to self-treat his right thumb as
26  instructed by Mr. Milliman and not seek to bother the medical staff due
27  to their objectional indifference.

28                                    -2-

11.    Between May 28, and July 28, 2004, Mr. Watson was seen by Dr. Galloway on 3 occasions concerning his grossly deformed right thumb.Dr. Galloway repeated his colleagues' improper diagnosis without ant diagnostic testing being done and continued the same ineffective and palliative treatments.

12.    Again, absent any definitve medical treatment, Mr. Watson reports that in or about June 2004, he attempted to alleviate the severe and throbbing pain radiating from his right thumb by cutting away some of his thumbnail.

13.    Dr. Galloway neither performed or recorded any differential diagnosis or collected any culture or speciman to confirm his diagnosis or determine the persistent pathology of Mr. Watson's right thumb; thereby refusing to detect or treat his cancerous growth.

14.    On none of Mr. Watson's 3 medical appointments with Dr. Galloway was he provided with health care consistent with community medical care standards or compliant with CDC quality care standards.

15.    On July 28, 2004, Dr. Galloway referred Mr. Watson to a staff surgeon, Dr. Douglas, to excise a portion of his right thumbnail due to a suspected intrusion of a "foreign body."

16.    On August 31, 2004, Mr. Watson was seen by Dr. Douglas, who declined to excise the thumbnail because he did not believe that to be the cause of Mr. Watson's continuing problem.  Dr. Douglas referred Mr. Watson to an outside dermatologist for a consultive examination.

17.    Mr. Watson states on about September 2, 2004, the request for dermatological consult was changed to a general surgery consult by Dr. Smith, Chief Medical Officer for Mule Creek State Prison.

18.    On November 2, 2004 with the surgical referral pending, Mr.

-3-

Declaration: Daly
Case: CV-S-06-1475 LKK EFB P

Watson's request for renewal of his pain medication, Vicoden, was
assigned to Dr. Milliman for treatment.   Albeit Dr. Milliman described
Mr. Watson's history and pathology of the right thumb, he denied renewal
of his pain medication; diagnosed the thumb as an infection and
prescribed bandaids and antibiotic ointment instead.

19.   Dr. Milliman's dismissive treatment of Mr. Watson's thumb
condition in November 2003 and his deprivation of pain medication in
November 2004, as well as his misdiagnosis and ineffective treatment
of metastatic skin cancer are not only professionally undignified and
disrespectfull, but manifestly consistant with gross negligence.

20.   On none of the 3 contacts with Mr. Watson did Dr. Milliman
provide medical treatment that was consistent with the standards of
community medical care or in compliance with CDC quality care standards.


I am willing and able to testify competently concerning the
foregoing statements, which are made under penalty of perjury under
the laws of the United States.

EXECUTED:  This 2nd day of March 2009 at Ione, California


_James E. Daly_, MS

Declaration: Daly
Case: CV-S-06-1475 LKK EFB P

-4-