UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES ROBERT GORTON,

      Plaintiff,

        v.                  NO. CIV. S-08-3069 LKK/GGH P

TODD, et al.,                O R D E R

      Defendants.

_____/

Plaintiff Charles Robert Gorton, a state prisoner, brings claims against Defendants Robert Hawkins and Sahir Naseer, physicians for the California Department of Corrections and Rehabilitation ("CDCR"), alleging that Defendants' delay in treatment of Plaintiff's kidney disorders constituted medical malpractice and violated his rights under the Eighth Amendment.

Pending before the court is Defendants' motion for summary judgment or, in the alternative, partial summary judgment. Defs' Mot., ECF No. 140. For the reasons provided herein, Defendants' motion is denied.

////

////

1

# I. BACKGROUND

## A. Plaintiff's Allegations

Plaintiff asserts that the delays in medical care provided by Defendants Hawkins and Naseer, primary care physicians at the Mule Creek State Prison ("MCSP"), constituted medical malpractice and deliberate indifference to Plaintiff's medical needs, contributing to Plaintiff's kidney deterioration and prolonged pain and suffering.[1]

As to Defendant Hawkins, Plaintiff contends, in short, that, even though Plaintiff's "nephrotic syndrome," a kidney disorder, should have been apparent to Dr. Hawkins, the actions taken by Dr. Hawkins from March to May of 2007 resulted in harmful and unnecessary delays in Plaintiff's treatment. See Pl's Am. Compl., ECF No. 10, at 11-19.[2]

As to Defendant Naseer, Plaintiff alleges, inter alia, that:

1. On August 6, 2007, after a visit to U.C. Davis Medical Center for an appointment with a nephrologist, Plaintiff was seen at the prison clinic by Dr. Naseer, who indicate[d] on Plaintiff's chart, "No Nephrology report, will check with . . . UM Nurse."

2. On September 27, 2007, Plaintiff was again seen by Dr. Naseer, "who file[d] an[] RFS [request for services], on a

---

[1] This court has granted the parties' stipulated dismissals of all defendants other than Defendants Hawkins and Naseer in this action. See Orders, ECF Nos. 141, 151.

[2] Page numbers cited herein refer to the court's electronic pagination system, unless otherwise noted.

1    'Routine' basis."  Within the CDCR, a "routine"

2    prioritization means that "an inmate will not receive

3    speciality medical care for 3 months."  Dr. Naseer wrote on

4    Plaintiff's chart, "[inmate] has nephrotic syndrome, was

5    seen 7/27/07 in UC Davis.  Needs 3 month [follow-up] appt

6    per UC Davis."

7  3.  On December 11, 2007, after a December 5, 2007 follow-up

8    appointment at U.C. Davis, Dr. Naseer indicated that "MCSP

9    had not received any medical reports from the 12/5 UCD

10   appointment."  Plaintiff "informed Dr. Naseer about the

11   ordered biopsy by Dr. Stevenson," a supervising physician

12   at U.C. Davis, "[b]ut Dr. Naseer informed Plaintiff that he

13   would not order anything based on the word of an inmate."

14 4.  On March 4, 2008, following a February 13, 2008 appointment

15   at U.C. Davis, Plaintiff "informed Dr. Naseer about the

16   urgent need to perform a colonoscopy within 2-3 weeks per

17   Dr. Don's instructions [from U.C. Davis]."  "Dr. Naseer

18   stated that because he didn't have any confirmation of this

19   UCD order in Plaintiff's medical file, he would not order

20   anything, especially based on the word of an inmate."

21   However, "because Plaintiff was 50 years old, Dr. Naseer

22   would order a colonoscopy for routine purposes."  "[E]ven

23   after MCSP "received the UCD medical report for the 2/13/08

24   visit, Dr. Naseer failed to update the RFS from 'Routine'

25   to 'Urgent'."

26 Id. at 28-38 (emphases omitted).

**B. Plaintiff's Claim Filed with the California Victim Compensation and Government Claims Board**

In September 2007, Plaintiff, acting in <u>propria persona</u>, filed a claim with the California Victim Compensation and Government Claims Board (the "Board" or "VCGCB") for "Malpractice with Medical negligence." Pl's Am. Compl., ECF No. 10, Att. 3, at 3. The claim indicates that it was signed by Plaintiff on September 13, 2007, and was received by the Board on September 18, 2007. <u>Id.</u> at 4, 9.

In his Board claim, Plaintiff makes the following assertions as to Dr. Naseer:

> While symptoms for my current medical condition were first noted back in 2/07, my condition wasn't officially diagnosed as "Acute N[e]phro[t]ic Syndrome" until 6/18/07, by physicians at Doctor's Hospital in Manteca[,] California.
>
> . . . .
>
> Doctors Hawkins . . . and Naseer, have each seen me for repeated visits. Each of them have admitted they have no professional idea as to what the cause for this condition is. Yet they have also provided no assistance to expedite my follow-up appointment to be seen by the Kidney Specialist at U.C. Davis [M]edical Center in Sacramento. As of this date I have still not been attended to for proper medical care.
>
> . . . .
>
> On August 1, I was seen by Dr. Naseer . . . who informed me he couldn't find the Manteca test results anywhere in my medical record. He then called the Records Clerk . . . who said she would look into it.
>
> On August 8, I was again seen by Dr. Naseer who informed me he still had no idea where my test results were and also stated he didn't have any idea whether or not I had been rescheduled for the follow-up appointment at U.C. Davis.

4

1    On August 15, I was seen by the on-site [n]urse .
     . . because of my continued discomfort dealing with
2    sever[e] "[w]hole-body" [e]dema. . . . [The nurse]
     then privately consulted with Dr. Naseer.
3
     . . . [T]he R/N informed me that Dr. Naseer had
4    prescribed a new medication . . . with the hope it
     would allow my kidneys to begin filtering out the
5    water retained in my body.

6    . . . .

7    Even though I have been experiencing relief from
     [e]dema upon taking this newly prescribed
8    medication . . . . the medical condition which is
     the actual underlying cause of this condition known
9    as "Acute N[e]phro[t]ic Syndrome" continues on.

10   . . . .

11   This deliberate prolonged waiting and watching
     attitude is nothing more than a cruel form of
12   punishment. . . . [T]here isn't any way to predict
     the . . . . the extent [of] permanent damage to the
13   kidneys.

14   Id. at 5-7.

15        On October 22, 2007, Plaintiff received a response from the

16   Board, acknowledging receipt of Plaintiff's claim and stating:

17   "Based on its review of your claim, Board staff believes that the

18   court system is the appropriate means for resolution of these

19   claims, because the issues presented are complex and outside the

20   scope of analysis and interpretation typically undertaken by the

21   Board." Id. at 9.  The Board's response further provided: "The

22   VCGCB will act on your claim at the December 13, 2007 hearing. .

23   . . The VCGCB's rejection of your claim will allow you to initiate

24   litigation should you wish to pursue this matter further." Id.

25   On December 19, 2007, the Board sent Plaintiff a notice that it had

26   rejected his claim at the December 13, 2007 hearing. Id. at 10.

## C. Plaintiff's Deposition Testimony

In an August 17, 2009 deposition, Plaintiff testified that, on September 27, 2007, "Dr. Naseer instead of filing a request for referral on an urgent basis filed it on a routine basis, and that gave the scheduler three months to file the appointment."  Pl's Dep., ECF No. 140, Att. 4, at 18-19.  Plaintiff continued that "it was Dr. Naseer's duty to file an urgent RFS instead of a routine RFS, and that . . . delayed my treatment even more. . . .  I hold Dr. Naseer liable for deliberate indifference for depriving me of required medical care in a timely manner."  Id. at 19.

In response to counsel's question, "is there anything else that Dr. Naseer did or didn't do that you are claiming was improper?", Plaintiff replied, "No.  That was the only complaint."  Id.

## D. Conflicting Expert Opinions[3]

The parties agree that their experts have reached contrary conclusions as to whether the actions of Defendants Hawkins and Naseer fell within the applicable standard of care.

In short, Plaintiff's expert, Dr. David H. Lovett, a Professor of Medicine at the University of California San Francisco School of Medicine and Chief of the Nephrology Section at the San Francisco Veterans Administration Medical Center, concluded that

---

[3] This court previously found a magistrate judge's order denying Plaintiff's request for appointment of an expert witness clearly erroneous and required Plaintiff to submit an *ex parte* request to incur costs and request for payment of expert witness fees.  Order, ECF No. 117.

1  Dr. Hawkins "acted outside the standard of care" by "failing to
2  undertake reasonable efforts [to] respond to obvious indicators of
3  nephrotic syndrome . . . from March 8 through June 22, 2007."
4  Lovett Report, ECF No. 146, Att. 3, at ¶¶ 19-28.  Noting that
5  Plaintiff was seen by Dr. Naseer "[b]etween July of 2007 and
6  January of 2008," Lovett concluded that Dr. Naseer "acted outside
7  the standard of care" in his treatment of Plaintiff between March
8  2008 and May 2008.  Id. at ¶¶ 30-37.

9      Defendants' expert, Dr. Eric C. Disbrow, a private
10 practitioner in Family Practice and Geriatric Medicine, concluded
11 that "Dr. Hawkins met the standard of care.  He treated what he
12 could treat appropriately . . . .  He requested referral to UCD
13 Nephrology on 5/18/07 the day after the patient returned with a
14 diagnosis of Nephrotic Syndrome. . . .  He reviewed the diagnostic
15 tests in a timely fashion and followed up appropriately."  Disbrow
16 Report, ECF No. 133, at 8-10.  Dr. Disbrow further concluded, "Dr.
17 Naseer met the standard of care. . . .  He did what he could to
18 move up the second UCD Nephrology visit one month . . . .  He was
19 very diligent in ordering lab and notifying the patient he would
20 have appointments."  Id. at 11-14.

21 **E. Defendants' Motion for Summary Judgment**

22     Defendants present two arguments in their motion for summary
23 judgment.

24     First, Defendants argue that Plaintiff is barred from seeking
25 damages for medical malpractice against Defendant Naseer for acts
26 Plaintiff failed to allege in his tort claim filed with the VCGCB.

1  Defs' Mot., ECF No. 140, at 11-13.  Specifically, Defendants

2  contend that Plaintiff's VCGCB claim "does not include any alleged

3  wrongful acts which occurred <u>after</u> the date he filed it," and that

4  Plaintiff "never filed any other claims with VCGCB, nor did he seek

5  to amend his claim, to allege any alleged wrongful acts by Dr.

6  Naseer occurring after that date." Defs' Mot., ECF No. 140, at 16.

7  Defendants further argue that Plaintiff's expert "only finds Dr.

8  Naseer's conduct below the standard of care concerning matters and

9  dates outside the ambit of Mr. Gorton's claim." <u>Id.</u> at 17.

10       Second, Defendants argue that, because the parties' submitted

11  expert testimony reached opposing conclusions on whether the

12  Defendants' treatment fell within the applicable standard of care,

13  "reasonable minds can differ as to whether their treatment was

14  within the applicable standard of care" and, therefore, both

15  Defendants are entitled to qualified immunity from suit.  <u>Id.</u> at

16  13-14.

17  **II. STANDARD FOR MOTION FOR SUMMARY JUDGMENT UNDER FEDERAL RULE**

18  **OF CIVIL PROCEDURE 56**

19       Summary judgment is appropriate "if the movant shows that

20  there is no genuine dispute as to any material fact and the movant

21  is entitled to judgment as a matter of law."  Fed. R. Civ. P.

22  56(a); <u>Ricci v. DeStefano</u>, 557 U.S. 557, 129 S. Ct. 2658, 2677

23  (2009) (it is the movant's burden "to demonstrate that there is 'no

24  genuine issue as to any material fact' and that they are 'entitled

25  to judgment as a matter of law'"); <u>Walls v. Central Contra Costa</u>

26  <u>Transit Authority</u>, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam)

8

1  (same).

2      Consequently, "[s]ummary judgment must be denied" if the court
3  "determines that a 'genuine dispute as to [a] material fact'
4  precludes immediate entry of judgment as a matter of law." <u>Ortiz</u>
5  <u>v. Jordan</u>, 562 U.S. ___, 131 S. Ct. 884, 891 (2011), <u>quoting</u> Fed.
6  R. Civ. P. 56(a); <u>Comite de Jornaleros de Redondo Beach v. City of</u>
7  <u>Redondo Beach</u>, 657 F.3d 936 (9th Cir. 2011) (<u>en banc</u>) (same).

8      Under summary judgment practice, the moving party bears the
9  initial responsibility of informing the district court of the basis
10  for its motion, and "citing to particular parts of the materials
11  in the record," Fed. R. Civ. P. 56(c)(1)(A), that show "that a fact
12  cannot be ... disputed."  Fed. R. Civ. P. 56(c)(1); <u>Nursing Home</u>
13  <u>Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp.</u>
14  <u>Securities Litigation)</u>, 627 F.3d 376, 387 (9th Cir. 2010) ("The
15  moving party initially bears the burden of proving the absence of
16  a genuine issue of material fact"), <u>citing</u> <u>Celotex v. Catrett</u>, 477
17  U.S. 317, 323 (1986).

18      If the moving party meets its initial responsibility, the
19  burden then shifts to the non-moving party to establish the
20  existence of a genuine issue of material fact. <u>Matsushita Elec.</u>
21  <u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-86 (1986);
22  <u>Oracle Corp.</u>, 627 F.3d at 387 (where the moving party meets its
23  burden, "the burden then shifts to the non-moving party to
24  designate specific facts demonstrating the existence of genuine
25  issues for trial").  In doing so, the non-moving party may not rely
26  upon the denials of its pleadings, but must tender evidence of

1 specific facts in the form of affidavits and/or other admissible

2 materials in support of its contention that the dispute exists.

3 Fed. R. Civ. P. 56(c)(1)(A).

4      "In evaluating the evidence to determine whether there is a

5 genuine issue of fact," the court draws "all reasonable inferences

6 supported by the evidence in favor of the non-moving party."

7 Walls, 653 F.3d at 966.   Because the court only considers

8 inferences "supported by the evidence," it is the non-moving

9 party's obligation to produce a factual predicate as a basis for

10 such inferences.   See Richards v. Nielsen Freight Lines, 810 F.2d

11 898, 902 (9th Cir. 1987).   The opposing party "must do more than

12 simply show that there is some metaphysical doubt as to the

13 material facts . . . . Where the record taken as a whole could not

14 lead a rational trier of fact to find for the nonmoving party,

15 there is no 'genuine issue for trial.'"   Matsushita, 475 U.S. at

16 586-87 (citations omitted).

17                          **III. ANALYSIS**

18 **A. The Scope of Plaintiff's Government Tort Claim**

19      For any state law cause of action seeking damages against a

20 California state or local government entity, the plaintiff must

21 demonstrate compliance with the California Government Claims Act

22 ("Government Claims Act" or the "Act"), Cal. Gov. Code §§ 900 et

23 seq.   Pursuant to this act, presentation of a claim to the

24 appropriate entity—-here, the VCGCB—-is a condition precedent to

25 the commencement of a lawsuit for damages against the State of

26 California or its agencies.   Cal. Gov. Code §§ 905.2, 945.4; see

1 also City of Stockton v. Superior Court, 42 Cal.4th 730, 734, 68

2 Cal.Rptr.3d 295, 171 P.3d 20 (Cal. 2007); City of San Jose v.

3 Superior Court, 12 Cal.3d 447, 454, 115 Cal.Rptr. 797, 525 P.2d 701

4 (Cal. 1974).  The claim filing requirement applies to suits against

5 public employees if it would also apply to a suit against the

6 employer.  Cal. Gov. Code § 950.2.[4]

7　　　The purpose of the Government Claims Act is said to be to give

8 the proper Board the opportunity to investigate and evaluate the

9 claim and, where appropriate, avoid litigation by settling

10 meritorious claims.  City of San Jose v. Superior Ct., 12 Cal.3d

11 447, 455, 115 Cal.Rptr. 797 (Cal. 1974); Dilts v. Cantua Elementary

12 School Dist., 189 Cal.App.3d 27, 32-33, 234 Cal.Rptr. 612 (Cal. Ct.

13 App. 1987).  "So long as the purposes of the claims statute are

14 effectuated," the requirements of the Act "should be given a

15 liberal construction in order to permit full adjudication of the

16 case on its merits."  Dilts, 189 Cal.App.3d at 33, 234 Cal.Rptr.

17 612.

18　　　"[A] claim need not contain the detail and specificity

19 required of a pleading, but need only fairly describe what [the]

20 entity is alleged to have done."  Stockett v. Association of

21 California Water Agencies Joint Powers Ins. Authority, 34 Cal.4th

22 441, 446, 99 P.3d 500 (Cal. 2004) (internal citations omitted).

23 ─────────────

24　　　[4] Section 910 of the Government Claims Act requires that the
claim state the "date, place, and other circumstances of the
occurrence or transaction which gave rise to the claim asserted"

25 and provide "[a] general description of the ... injury, damage or
loss incurred so far as it may be known at the time of presentation

26 of the claim."  Cal. Gov. Code § 910.

1  "Where the complaint merely elaborates or adds further detail to
2  a claim, but is predicated on the same fundamental actions or
3  failures to act by the defendants, courts have generally found the
4  claim fairly reflects the facts pled in the complaint."  Id. at
5  447.

6       In his claim filed with the VCGCB, Plaintiff properly gave the
7  Board notice of the basis of Plaintiff's medical malpractice claims
8  against Dr. Naseer.  Plaintiff predicated his malpractice claim
9  against Dr. Naseer on what Plaintiff characterized as Dr. Naseer's
10  "deliberate prolonged waiting and watching attitude" in treating
11  Plaintiff's diagnosed kidney disorder.  Plaintiff specifically
12  referred to Dr. Naseer's failure to "expedite [] follow-up
13  appointment[s]" and his failure to treat Plaintiff's diagnosed
14  acute nephrotic syndrome.  These allegations were sufficient to
15  give the VCGCB the opportunity to investigate and evaluate
16  Plaintiff's claims.

17       The court finds it unreasonable to expect Plaintiff to have
18  filed amended claims with the VCGCB related to Dr. Naseer's ongoing
19  treatment of Plaintiff's kidney disorder, either during the
20  pendency of the Board's review of Plaintiff's claim, or after the
21  Board rejected Plaintiff's claims and explicitly indicated that the
22  "court system is the appropriate means for resolution of these
23  claims."  It would defy reason to require Plaintiff to continually
24  return to the Board after each encounter with Dr. Naseer, when the
25  Board specifically provided that Plaintiff's claims would be more
26  properly resolved through litigation.

1    In his federal proceeding, Plaintiff's medical malpractice
2    claims against Dr. Naseer are based on the same alleged delay in
3    Dr. Naseer's treatment of Plaintiff's acute nephrotic syndrome as
4    Plaintiff's malpractice claim against Dr. Naseer, as asserted to
5    the VCGCB.   The factual allegations included in his amended
6    complaint, which occurred after Plaintiff's VCGCB claim was filed,
7    merely provide further detail to Plaintiff's VCGCB claim.   Thus,
8    the factual allegations against Dr. Naseer in Plaintiff's amended
9    complaint fall within the ambit of Plaintiff's VCGCB claim.

10   Defendants' motion for summary judgment based on the
11   California Government Claims Act is DENIED.[5]

12   **B. Defendants' Entitlement to Qualified Immunity**

13   The doctrine of qualified immunity "protects government
14   officials from 'liability for civil damages insofar as their
15   conduct does not violate clearly established statutory or
16   constitutional rights of which a reasonable person would have
17   known.'"   <u>Tibbetts v. Kulongoski</u>, 567 F.3d 529, 535 (9th Cir. 2009)
18   (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727,

19   _____

20   [5] Defendants also argue that, because Plaintiff testified in
     deposition that his claim regarding Dr. Naseer was limited to Dr.
21   Naseer's actions in September 2007, and Dr. Lovett only found Dr.
     Naseer's actions in 2008 below the standard of care, Plaintiff's
22   claims against Dr. Naseer are unsubstantiated.   At the summary
     judgment stage, the court is unwilling to disregard Dr. Lovett's
23   opinion as to Dr. Naseer's conduct in 2008, which relates to the
     same underlying failure to treat Plaintiff's kidney disorder as Dr.
24   Naseer's alleged conduct in 2007, merely due to Plaintiff's
     deposition testimony, when Plaintiff's deposition testimony itself
25   is contradicted by Plaintiff's amended complaint.   The court
     expresses no opinion as to whether Plaintiff can or should amend
26   his deposition testimony.

1  73 L.Ed.2d 396 (1982)).   In <u>Saucier v. Katz</u>, 533 U.S. 194, 121

2  S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court established

3  the following two-pronged inquiry for determining whether qualified

4  immunity applies in a given situation: (1) whether the facts that

5  a plaintiff has alleged or shown make out a violation of a

6  constitutional right; and (2) whether the right at issue was

7  "clearly established" at the time of the defendant's alleged

8  misconduct.   <u>Id.</u> at 201 (citations omitted).[6]   Qualified immunity

9  is applicable unless the official's conduct violated a clearly

10  established constitutional right.   <u>Pearson v. Callahan</u>, 555 U.S.

11  223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

12      Drawing all reasonable inferences in favor of the non-moving

13  party, Plaintiff has established that a constitutional violation

14  occurred.   In order to establish a constitutional violation under

15  the Eighth Amendment, Plaintiff must show that Defendants were

16  "deliberately indifferent" to his "serious medical needs."   <u>See</u>

17  <u>Estelle v. Gamble</u>, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251

18  (1976).

19      In the Ninth Circuit, the deliberate indifference test is

20  comprised of two parts.   <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th

21  Cir. 2006); <u>McGuckin v. Smith</u>, 974 F.2d 1050 (9th Cir. 1991),

22  _overruled on other grounds by_ <u>WNX Techs., Inc. v. Miller</u>, 104 F.3d

23  ─────────────

24      [6] The court in <u>Saucier</u> established these considerations as a
    strict two-step process through which lower courts should move
    sequentially.   533 U.S. at 200-01.   In <u>Pearson v. Callahan</u>, 555
25  U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), however, the
    Court held that lower courts have discretion to decide which of the
26  two prongs to consider first.

1133 (9th Cir. 1997) (en banc).  First, Plaintiff must establish
a "serious medical need," which may mean, for example, "'the
existence of an injury that a reasonable doctor or patient would
find important and worthy of comment or treatment." <u>Lopez v.</u>
<u>Smith</u>, 203 F.3d 1122, 1131 (9th Cir. 2000) (quoting <u>McGuckin</u>, 974
F.2d at 1059-60).  Drawing all reasonable inferences in favor of
Plaintiff, the court credits the expert testimony of Dr. Lovett,
who stated that "[u]ntreated nephrotic syndrome of this magnitude
is an extremely serious medical condition associated with
significant morbidity and mortality."  Lovett Report, ECF No. 146,
Att. 3, at ¶ 28.  Dr. Lovett's testimony is sufficient to establish
a serious medical need.

Second, Plaintiff must show that Defendants' responses to this
need were deliberately indifferent.  <u>Lopez</u>, 203 F.3d at 1132.
Prison officials may be deliberately indifferent to a prisoner's
serious medical need when they delay, deny, or intentionally
interfere with medical treatment.  <u>Hutchinson v. United States</u>, 838
F.2d 390, 394 (9th Cir. 1988).  Deliberate indifference exists only
where the prison official "knows of and disregards an excessive
risk to inmate health or safety."  <u>Farmer v. Brennan</u>, 511 U.S. 825,
114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); <u>see also Jackson v.</u>
<u>McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996) ("[Plaintiff] must show
that the course of treatment the doctors chose was medically
unacceptable under the circumstances . . . [and] that they chose
this course in conscious disregard of an excessive risk to
plaintiff's health.").  Again, drawing all reasonable inferences

1   in favor of Plaintiff, the court credits the testimony of Dr.

2   Lovett over the conflicting testimony of Dr. Disbrow.  Dr. Lovett

3   testified that "[f]rom February of 2007 through May of 2008, Drs.

4   Hawkins and Naseer knew that Mr. Gorton faced a serious medical

5   need but failed to undertake reasonable efforts to address Mr.

6   Gorton's need, causing further delays in his diagnosis and

7   treatment and ultimately causing Mr. Gorton to suffer harm."

8   Lovett Report, ECF No. 146, Att. 3, at ¶ 41.   Dr. Lovett's

9   testimony is sufficient to establish that Defendants were

10  deliberately indifferent to Plaintiff's serious medical needs in

11  violation of the Eighth Amendment.

12      Additionally, the constitutional right Plaintiff alleges that

13  Defendants violated--the Eighth Amendment prohibition on cruel and

14  unusual punishment in the context of inmate medical care--is

15  unquestionably clearly established law.  See Estelle, 429 U.S. at

16  105-06.   Thus, Plaintiffs have provided sufficient evidence to

17  establish that the Defendants are not entitled to qualified

18  immunity under the two-pronged inquiry of Saucier.

19      Defendants argue that, because the experts reached opposing

20  conclusions, "reasonable minds can differ as to whether their

21  treatment was within the applicable standard of care" and,

22  therefore, Defendants are entitled to qualified immunity.

23  Defendants go too far in assuming that a fact-finder would find the

24  testimony of Dr. Disbrow at least as persuasive as that of Dr.

25  Lovett.  The weight given to each expert's testimony, and thus the

26  determination as to whether Defendants' actions constituted

1  deliberate indifference, requires a factual, as opposed to a legal,

2  determination that is for the jury.  That is, the experts'

3  conflicting testimony raises, as opposed to obviates, a genuine

4  dispute over a material fact to be resolved at trial.

5      Defendants therefore fail to prove the absence of a genuine

6  issue of material fact and their motion for summary judgment based

7  on qualified immunity is DENIED.

8                          **IV. CONCLUSION**

9      For the foregoing reasons, Defendants' motion for summary

10  judgment is DENIED.

11      IT IS SO ORDERED.

12      DATED:  August 8, 2012.

13

14

15  _____
    LAWRENCE K. KARLTON
16  SENIOR JUDGE
    UNITED STATES DISTRICT COURT

17

18

19

20

21

22

23

24

25

26